## SUNBEAM CORP. v. R. H. MACY & CO., Inc. et al.

United States District Court
S. D. New York.
March 6, 1952.

Herman T. Van Mell, Chicago, Ill., Rogers, Hoge & Hills, New York City (George M. Chapman, New York City, of counsel), for plaintiff.

Lauterstein & Lauterstein, New York City, Thomas M. Green, New York City (Leon Lauterstein and Jacob L. Isaacs, New York City, of counsel), for defendants.

MURPHY, District Judge.

This motion by defendants for an order under Rules 37 and 34, Fed.Rules Civ. Proc., 28 U.S.C.A., directing plaintiff's officers to answer certain questions and produce specified documents relating to those questions poses the problem of what limitations, if any, exist for the scope of pretrial discovery in the Federal Courts. Whatever virtue there may be in brevity, it is conspicuously absent from the encyclopediac complaint which runs to 55 printed pages of generous dimension with 14 exhibits appended. If summary is at all possible, the principal portion of plaintiff's pleading is brought under the Sherman Act, 15 U.S.C.A. §§ 1–7, 15 note, alleging monopoly and inchoate monopoly by conspiracy and attempt on the part of defendants under § 2 of the Act, as well as conspiracy to restrain trade under § 1. The rest of it is concerned with a vague assortment of competitive torts of which it is possible to identify (1) inducing breach of contract and perhaps (2) appropriation

of a competitor's trade values. Briefly, the theory of plaintiff's action is that immediately following the decision in the Schwegmann case (Schwegmann .v. Calvert Distilleries Corp.) 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035, which shook the resale price maintenance system, defendants undertook to corner the retail market on mixmasters manufactured by plaintiff through sustained and progressive price cutting. Defendants have filed no answer but have sought without avail to examine plaintiff's officers about the policing of plaintiff's retail price maintenance system prior to the Schwegmann decision. Defendants insist that for some time before the Schwegmann decision, plaintiff's price system was illegal because while it held non-signers like defendants in check, it often permitted the signers to take price-cutting liberties. This, defendants urge, affects somehow plaintiff's good will which defendants are alleged to have damaged. And thus, defendants conclude, the pre-Schwegmann inquiries are relevant. For its part, plaintiff insists that since its complaint is concerned only with post-Schwegmann behavior of defendants, the scope of defendants' pre-trial examination of plaintiff's officers should accordingly be limited. Pre-Schwegmann inquiry, plaintiff claims, is darkly motivated by defendants' efforts to frustrate this action by constructing a voluminous and expensive record.

■ By now it is trite to say that the scope of pre-trial examination in the Federal Courts is sweeping and covers not only evidence for use at trial but also matters inadmissible as evidence but leading to discovery of admissible evidence. "No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case." Hickman v. Taylor, 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451. It is not however correct to intimate that the Rules permit unlimited discovery. Matters which are privileged [Rule 26(b)], or examinations conducted in bad faith or to annoy, embarrass or oppress [cf. Rules 30(b) and (d)] and inquiries which are clearly not relevant to the probable issues in the case [Rule 26 (b)] are not subject to discovery. The question posed by this case is one of relevancy. Its determination is certainly not facilitated by absence of answer by defendants. They state their theory of relevancy in memorandum thus: "It is, in substance, defendants' contention, inter alia, that plaintiff's trademarks and good will which constitute the foundation of this action are the fruits of an illegal system of price fixing in existence both prior and subsequent to May 22, 1951, and that in the enforcement of such system, plaintiff has been guilty of unlawful discrimination against Macy."

It is open to serious doubt whether evidence that plaintiff failed to police adequately its price system prior to Schwegmann would. nullify defendants' liability under the Sherman Act or under the competitive torts apparently stated in plaintiff's expansive complaint. A showing that plaintiff's trademarks and good will are the fruits of a discriminatory maintenance of its price system is no doubt relevant to determination of damage for at least one of of the competitive torts alleged. But plaintiff does not seek compensatory damage for these competitive torts but rather treble damages available only for the statutory wrongs alleged. And it is by no means clear that such a showing would be relevant to fixing damages under the Sherman Act. Defendants' own statement of purpose for its pre-Schwegmann inquiries is far from a satisfactory one with respect to the requirement of relevancy.

■ Nevertheless, it is entirely possible to conceive of several grounds relevant to defendants' liability under the Sherman Act in this action which might be exposed by pre-Schwegmann. inquisition of plaintiff's officers along these lines. At this stage of the proceeding, a statement by the Court of what these grounds are would hardly be fair. It may be that defendants for tactical reasons have refrained from disclosing them.

Motion granted.