**PAPPAS et al. v. LOEW'S Inc., et al.**

Civ. A. 4068.

United States District Court
M. D. Pennsylvania.

Feb. 12, 1953.

Karl B. Reichard, Milton, Pa., Charles Bidelspacher, Williamsport, Pa., for plaintiffs.

Edward W. Warren, of O'Malley, Harris, Warren & Hill, Scranton, Pa., S. Augustus Davis, Scranton, Pa., for defendant Comerford Theatres, Inc.

Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for defendant, Warner Bros. Pictures Inc.

Arlin M. Adams, of Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., Furst, McCormick, Muir & Lynn, Williamsport, Pa., for all other defendants.

MURPHY, District Judge.

This is an action under the anti-trust laws by the owners and operators of the Legionnaire Theatre in Milton (Pop. 8573) against ten distributors of motion pictures and Comerford Theatres, Inc., which operates the Capitol Theatre, the only other theatre, located in Milton in this district. All defendants have filed answers denying the critical averments of the complaint, the charge of violating the anti-trust laws and the claim that plaintiffs have suffered damages. Plaintiffs and defendants each filed motions to produce documents under Rule 34, Fed.Rules Civ.Proc. 28 U.S.C., plaintiffs addressed to defendant Comerford alone. Plaintiffs then propounded interrogatories to the defendants under Rule 33, nineteen addressed to Comerford, thirty to each of the other defendants.

Comerford answered all but interrogatories 11, 12, 13, 14, 15 and 19, to which it objected generally and specifically. The other defendants each objected generally to all of the interrogatories submitted and specifically to 9, 10, 13, 14, 15, 16, 17, 18, 19, 20, 21, 28, 29 and 30.

In its answer to plaintiffs' interrogatories Comerford stated: (a) from June 30, 1934, when it opened its Milton theatre, to August 3, 1951, the date of filing the complaint, it had numerous contracts with all other defendants, except the Universal Corporation, for the exhibition of motion pictures but that in none of them was any preference accorded to their Milton theatre over that of plaintiff; (b) commencing June 30, 1934, they contracted for pictures to be exhibited on a first run basis in Milton at the Capitol Theatre through their designated agents, and that the agreements were executed by those agents on their behalf and by others on behalf of the other defendants; (c) each picture which was exhibited on a first run basis at the Capitol Theatre in Milton was licensed on an individual basis. A separate agreement was negotiated and entered into with the distributors on a picture by picture basis but there were many instances where the person negotiating for pictures at the Capitol Theatre at Milton was also negotiating for the same film for other theatres, and that after the minds had met on the separate agreements as a matter of convenience to all parties and to minimize the records that must be executed and filed, the terms of those agreements were entered on a single document setting forth the terms for each theatre; (d) after December 9, 1949, licensing agreements for exhibition of pictures at the Capitol were restricted to a single motion picture and were entered into on the basis of competitive bidding.

During the time in question all types of pictures were offered by the other defendants to Comerford for exhibition first run in Milton; some thus offered were not exhibited. Comerford kept no records of pictures offered for exhibition first run in Milton and no representative of Comerford has any recollection in that respect.

Pursuant to plaintiffs' rule to produce, Comerford was ordered to and produced

for inspection and copying all available film contracts (some thousands thereof), booking books, film records and work sheets. Those records list all pictures which have been exhibited on first run basis at the Capitol Theatre in Milton, and present for plaintiffs studying, copying and photographing all available contracts.

Plaintiffs in their interrogatories asked Comerford (No. 11) to state the terms and attach copies of all contracts for exhibition first run in Milton; (No. 12) to name the pictures, producer and dates of exhibition first run in Milton of all "Type A"[1] pictures; to list the pictures licensed (No. 13) under individual licensing agreements for the particular film, (No. 14) covering exhibition rights for two or more pictures; (No. 15) all other contracts in addition to No. 13 and No. 14; and finally (No. 19) to name all Type A pictures licensed under agreements covering two or more theatres, naming the pictures shown in Milton and those not shown there. As to 13, 14, 15 and 19 defendant was asked to state the terms of each particular agreement.

■ "The deposition-discovery rules create integrated procedural devices." Hickman v. Taylor, 1947, 329 U.S. 495 at page 505, 67 S.Ct. 385, 391, 91 L.Ed. 451.

" * * * this we believe to be a recognition by the Court that the production by a party of any documents, either for mere inspection or for obtaining a copy, is predicated upon first showing good cause therefor and consequently is to be obtained only by proceeding under Civil Procedure Rule 34." Alltmont v. United States, 3 Cir., 1950, 177 F.2d 971, at page 975. See 4 Moore's Federal Practice, 2d Ed., p. 2322. "Most of the cases have held that interrogatories requesting copies of documents are not proper in any situation." Citing cases.

■ "In general where records have been produced for inspection and copying, interrogatories requiring compilation of the information there contained would be improper." Savannah Theatre Co. v. Lucas & Jenkins, D.C.Ga.1943, 10 F.R.D. 461, at page 464.

■ "If the matter inquired of be only found in records or documents and is only available at very considerable effort or expense and the books or documents be equally available to both parties * * * no reason would seem to exist to cast the burden of effort or expense upon the interrogated party." Cinema Amusements, Inc. v. Loew's Inc., D.C.Del.1947, 7 F.R.D. 318, at page 321, 322, and see Moore Id. at 2320. "It is also obvious that one party should not be allowed to require another to make investigation, research or compilation of data or statistics for him which he might equally as well make for himself". Byers Theatres, Inc. v. Murphy, D.C.Va.1940, 1 F.R.D. 286, at page 289; Klein v. Leader Elec. Corp., D.C.Ill.1948, 81 F.Supp. 624, at page 625.

■ Copies need not be furnished. Bruen v. Huff, D.C.W.D.Pa.1948, 8 F.R.D. 322; Barrows v. Koninklijke Luchtvaart Maatschappij, D.C.N.Y., 11 F.R.D. 400, at page 401, and see Caldwell-Clements, Inc. v. McGraw-Hill Pub. Co., D.C.N.Y., 12 F. R.D. 531, at page 538.

The term "Type A" picture is not one upon the definition of which those in the industry are in agreement. At best it is a matter of opinion.[2]

---

1. Or that type which would be exhibited first run in any metropolitan area.

2. See the Annals of the American Academy of Political and Social Science, November, 1947, "The Motion Picture Industry," at p. 7, "When Adolph Zukor had launched his Famous Players company, he presented a schedule of attractions in three classes—A, B, and C. Class C was to present famous picture players in famous plays. Bernhardt was typical of

Class A. Mary Pickford was Class C." And Id. at p. 22, "The 'program' or 'B' picture * * *. The feature pictures * * *." P. 29, "The appeal of a picture varies considerably from theater to theater." P. 52 and see P. 127, "Class A commercial film." See pp. 132–133, "* * * policies which combine A, B, and C picture ratings." See William Goldman Theatres Inc. v. Loew's, Inc., 3 Cir., 1945, 150 F.2d 738, at page 741,

■ While we are fully cognizant of the fact that there is nothing in the rule precluding the calling for an opinion in an interrogatory, see Moore Op. Cit. supra at p. 2310, and see Caldwell-Clements Inc. v. McGraw-Hill Pub. Co., supra, 12 F.R.D. at pages 543–544, in view of the conflict as to what the term actually means and because the contracts have been presented to the plaintiffs for their analysis, we will sustain the objection to the interrogatory calling for an opinion. Onofrio v. American Beauty Macaroni Co., D.C.Mo.1951, 11 F.R.D. 181, at page 184. If after plaintiffs have completed their examination of the documents produced they believe they have not secured all available information they may again move so that the gaps, if any, may be filled.

As to the other defendants—

■ While defendants have objected generally to all thirty interrogatories, they have objected specifically to only fourteen. The burden of persuasion is on the objecting party to show that the interrogatories should not be answered. See Moore Id. p. 2336. Objections must be sufficiently specific that the court may, in considering such objections with the interrogatories propounded, ascertain therefrom their claimed objectionable character. Id. We do not believe defendants' general objections meet that test. See Wolf v. United Air Lines, Inc., D.C.M.D.Pa.1949, 9 F.R.D. 271, at page 273.

■ Interrogatory No. 9 will be answered. In giving the customary procedure followed by the particular defendant for the arrangements of exhibition of pictures in Milton, defendant may incorporate by reference the Comerford reply. "One purpose of interrogatories is to obtain admissions from the adverse party. It is therefore no objection in the usual case that the information sought is within the knowledge of the interrogating party." Moore Id. p. 2293.

Objection to No. 10 is overruled.

■ In No. 13 plaintiffs ask defendants to list all subsidiaries engaged in any branch of the motion picture industry over an 18-year period; to state the nature and extent of the intercorporate relationship. As to the permissible scope of interrogatories, see 4 Moore Id., pp. 2267, 2289; G. & P. Amusement Co. v. Regent Theatre Co., D.C.Ohio 1949, 9 F.R.D. 721, at page 724. As to the possible scope of the interrogatories, see Annals, Op. Cit. supra, "The Problem of Monopoly", at p. 126. See Savannah Theatres Co. v. Lucas & Jenkins, supra, 10 F.R.D. at page 464; Cinema Amusements Inc. v. Loews Inc., supra, 7 F.R.D. at page 322. " 'The asserted history of the conspiracy and not the scope of plaintiff's damage provides the temporal boundary for the discovery.' Hillside Amusement Co. v. Warner Bros. Pictures, Inc., D.C., 7 F.R.D. 260, 262." Caldwell-Clements, Inc. v. McGraw-Hill Pub. Co., supra, 12 F.R.D. at page 536, but see Id. at page 537; Bordonaro Bros. Theatres Inc. v. Loew's Inc., supra, D.C., 7 F.R.D. at page 213, and see suggested limitations in "Short Cuts" in Long Cases, in 13 F.R.D. 41 at page 54. In view of the limited problem with which we are confronted, i. e., competition between two theatres in Milton, we feel the interrogatory is too broad in scope and must be modified.

■ Each defendant is required to state whether or not any subsidiary corporation ever did any business either with Comerford theatres, the other defendant, or the plaintiffs directly for their Milton theatre. If any such occurred the defendant should state the nature and extent of the corporate

"first-class motion pictures". And see record in Goldman case, p. 398a–399a, and Vol. 1 Joint App. Id., p. 209–211a, 212–241a, and see Vol. 11, The World Book Encyclopedia, p. 5290; United States v. Crescent Amusement Co., 323 U.S. 173 at page 182, 65 S.Ct. 254, 89 L.Ed. 160, "feature pictures". Inter-

state Circuit, Inc. v. United States, 306 U.S. 208, at page 214, 59 S.Ct. 467, at page 469, 83 L.Ed. 610, "first-class feature films". Bordonaro Bros. Theatres, Inc., v. Loew's, Inc., D.C.W.D.N.Y.1947, 7 F.R.D. 210, 211, "first class feature motion pictures for exhibition on first run."

relationship of such subsidiary with the particular defendant.

No. 14 asks the location and names of first run theatres conducted by each defendant or its subsidiary over an 18-year period throughout the United States. See Annals, Op. Cit. supra at p. 126.

No. 15 covers the same area of inquiry where theatres were jointly operated. Paragraph 16 of the complaint says the unlawful acts and violations and the interstate commerce involved were carried out in part in this district. Paragraphs 19, 20 and 21 limit the area to the borough of Milton. We feel the inquiry too broad and for the reasons discussed in disposing of No. 13, we limit the required answers to the area covered by the Comerford circuit and the plaintiff involving theatres similarly situated.

No. 16 is the "Type A" inquiry discussed supra, and is subject to the same geographical area objections as No. 13 to No. 15 inclusive. Objection thereto is therefore sustained. For the same reason the objection to No. 17 as stated is sustained.

If in view of footnote 2, supra, plaintiffs will modify their inquiry, the information will be ordered furnished as to theatres similarly situated in the Comerford circuit —plaintiffs' area.

After modification to No. 16 the answer to plaintiffs' No. 18 may be obtained from the documents already supplied by Comerford. Plaintiffs may then ask for admission of the truth of their findings.

No. 19 and No. 28 make the same inquiry in effect as Comerford's No. 12 and No. 13; No. 20 as Comerford's No. 14; No. 21 the same as Comerford's No. 15 and No. 19; so too as to plaintiffs' No. 29 and No. 30.

The answers are available to the plaintiffs from the documents already supplied. If after plaintiffs' investigation and compilation additional information is required, inquiry may then be made with reference thereto.

As to the scope of interrogatories generally, see observations of Judge Leahy in Zenith Radio Corp. v. Radio Corp. of America, D.C.Del.1952, 106 F.Supp. 561, at page 565.

An order embracing the foregoing will be handed down herewith.

