BROADWAY & NINETY-SIXTH STREET REALTY COMPANY et al., Plaintiffs,

v.

LOEW'S INCORPORATED et al., Defendants.

SKOURAS THEATRES CORPORATION et al., Plaintiffs,

v.

RADIO-KEITH-ORPHEUM CORPORATION et al., Defendants.

United States District Court
S. D. New York.

Jan. 28, 1958.

Weisman, Celler, Allan, Sprett & Sheinberg, New York City, for plaintiffs. Milton C. Weisman, Adolph Kaufman, Cecelia H. Goetz, New York City, of counsel.

O'Brien, Driscoll & Raftery, New York City, for defendants, RKO Keith-Orpheum Theatres, Inc. and RKO Theatres Corporation, Edward C. Raftery, George A. Raftery, New York City, of counsel.

Ferdinand Pecora, New York City, for defendant, Columbia Pictures Corporation.

Myles J. Lane, New York City, for defendants, Stanley Warner Corporation and Stanley Warner Management Corporation.

Simpson, Thacher & Bartlett, New York City, for defendants, Paramount

Pictures, Inc., Paramount Film Distributing Corporation and Paramount Pictures Corporation, Louis Phillips, E. Compton Timberlake and Marvin H. Ginsky, New York City, of counsel.

Donovan, Leisure, Newton & Irvine, New York City, for defendants, Radio-Keith-Orpheum Corporation, RKO Radio Pictures, Inc. and RKO Pictures Corporation, Sidney P. Howell, Jr., and V. Keith Young, New York City, of counsel.

BRYAN, District Judge.

These are two consolidated actions "under the Federal Anti-Trust Laws (15 U.S.C.A. Sections 1, 2, 15 and 26)" to recover treble damages totaling $101,690,000. A counterclaim and cross-claim interposed by one of the defendants against the plaintiffs and certain added defendants, based on the same statutes, seeks treble damages of $41,250,000.

Plaintiffs are owners, lessees, operators and managers of motion picture theatres, and exhibitors of motion pictures on a very large scale. Defendants are major motion picture producers, distributors and exhibitors.

In substance, the amended complaints charge that defendants, RKO Keith-Orpheum Corporation, Warner Brothers Pictures, Inc., Paramount Pictures, Inc., Columbia Pictures Corporation, Universal Pictures Company, Inc., and United Artists Corporation, and various of their subsidiaries also named as defendants, together with Loew's Incorporated and Twentieth-Century-Fox Film Corporation, comprising the "big eight" in the motion picture industry, since "prior to 1931" have engaged in continuing combinations and conspiracies to restrain interstate commerce and to create a monopoly in the distribution and exhibition of motion pictures throughout the United States. The conspiracy and monopoly charged are based in whole or in part upon the violations of the Anti-Trust Laws found to have existed in United States v. Paramount Pictures, Inc., D.C.S.D.N.Y., 66 F.Supp. 323, 70 F.Supp. 53, affirmed in part and reversed and remanded in part 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260, 85 F.Supp. 881; United States v. Loew's, Inc., D.C.S.D. N.Y., 70 F.Supp. 53, affirmed 339 U.S. 974, 70 S.Ct. 1032, 94 L.Ed. 1380. The amended complaints allege a series of specific acts by which these conspiracies were carried out in the New York metropolitan area allegedly affecting 47 theatres owned, leased, operated or managed by the plaintiffs. The acts alleged include illegal division of territories among the conspirators, enforcement of unreasonable runs and clearances, fixing of admission prices, use of discriminatory license privileges, exclusion of independents from first runs and utilization of defendants' monopoly powers to force plaintiffs into disadvantageous pools and sales.

Settlement has been effected with Loew's Incorporated which had been named as one of the defendants but is therefore no longer in the case.

The answers of the other defendants are, in substance, general denials of the material allegations of the amended complaints.

The answer of defendant RKO Keith-Orpheum Theatres, Inc. also contains a counterclaim and cross-claim against the plaintiffs and against added defendants Twentieth-Century-Fox Film Corporation and George P. Skouras, Spyros P. Skouras and Charles P. Skouras, now deceased. It alleges that the corporate plaintiffs and added defendants, who were under the control and domination of the Skouras Brothers, in combination with them, owned more than a thousand theatres located throughout the United States with the largest combined seating capacity of any theatre operating group in the country. The plaintiffs and the added defendants, it charges, themselves, engaged in combinations and conspiracies to restrain trade in the exhibition of motion pictures in the areas in which their theatres operated, including the New York metropolitan area where defendant

RKO Keith-Orpheum Theatres, Inc. operated fourteen theatres. The combination and conspiracy is alleged to have been carried out in the New York area through means and practices similar to those charged in the amended complaints and the acts complained of are those which are alleged to have affected the RKO theatres in that area.

After issue had been joined in the action and consolidation had been effected, four groups of defendants and one individual defendant, each represented by separate counsel, commenced to take the deposition before trial on oral examination of George P. Skouras, pursuant to Rule 26, F.R.C.P., 28 U.S.C.A. Skouras, among other things, was the president and a major stockholder of plaintiff Skouras Theatres Corporation, and an officer, director or stockholder of various of the other plaintiffs and added defendants, and was an added defendant himself. By the time the examination had run to some two thousand pages the witness had refused to answer 422 individual questions directed to him by various of the examining counsel, after objection thereto by his counsel and a direction not to answer.

Four separate motions were then brought on to compel the witness Skouras to answer the questions which had been propounded to him by the respective counsel for the examining defendants, pursuant to Rule 37(a), F.R.C.P. These motions, which will be referred to here as the RKO Theatres motion, the Columbia motion, the Warner motion and the Paramount RKO motion, are now before me for determination.

This case comes within the purview of the Report on "Procedure in Anti-Trust and Other Protracted Cases" made by the Committee headed by Judge Prettyman, which was adopted by the Judicial Conference of the United States on September 26, 1951 (13 F.R.D. 62). It is a case where "The potential range of issues, evidence and argument is so great, and the necessities of adversary representation so compelling, that the activities of counsel will result in records of fantastic size and complexity unless the trial judge exercises rigid control from the time the complaint is filed." 13 F.R.D. 66. In such a case, as the Report pointed out, "pleadings will not serve to particularize issues sufficiently * * * and motions for particulars will not serve that purpose. Such particularization must be achieved by informal conferences between judge and counsel well in advance of a possible trial date." 13 F.R.D. 67. Even where issues cannot be adequately formally framed and finally fixed prior to the processes of discovery.

"* * * informal conferences between the judge and counsel should nevertheless be held when the basic pleadings are in, and before discovery processes are begun. The issues indicated or known at that point should be framed and stated. They should serve as the basis for the bounds of permissible discovery. Thereafter, if it appears advisable or necessary, the issues which are to control the subsequent course of the trial may be reframed and stated in the pre-trial order contemplated by Rule 16." 13 F.R.D. 68.

Yet thus far in this case there have been no conferences such as were suggested in the Prettyman Report, nor has any pretrial program been worked out with the court which would carry forward the litigation in a logical and orderly manner so as to narrow and reduce to a minimum the issues to be tried, the conflicts in the evidence and the matters as to which the parties are in actual disagreement, and get down to the hard core of the litigation. Under such circumstances, as the Prettyman Report points out, "deposition or discovery proceedings outside the planned scope of the judge's direction are likely to be at least surplusage if not quite in conflict" with such a program set by the judge, and "interparty discovery proceedings, under the Rules of Procedure" not so arranged for "are not

helpful in the elimination of unnecessary delay, expense, or volume of record." 13 F.R.D. 83.

The present posture of this case points up the wisdom of these observations since there has been no attempt to frame the issues under the court's direction even on a tentative or preliminary basis. The discovery by deposition which is going on here is under pleadings which draw issues almost as broad as they are long, of very wide range and complexity and relating to a period of more than 22 years.

Under these circumstances it can almost be said that "taking into consideration the conceded complexity and magnitude of the suit and the contentions both parties make here as to the breadth of the issues in the case, it would be sheer guesswork for this Court to designate any particular item as irrelevant * * *" Bank of America v. Loew's International Corp., D.C.S.D.N.Y., 19 F. R.D. 115, 116.

Nevertheless, the problem is before me and it must be met. The solution must be dictated as much by practical considerations as by theoretical application of the principles of discovery procedure as authorized by the Federal Rules of Civil Procedure. In the absence thus far of any limitations of the issues other than those drawn by the pleadings the guiding principles must be those of the Federal Rules of Civil Procedure relating to deposition-discovery proceedings. Examination must be permitted on all matters which appear to be reasonably relevant under these rules at this stage of the action. However, practical considerations dictate that the parties should not be permitted to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so. If this places some limitations on the scope of the examination beyond those flowing from a broad interpretation of the rules, it is because the rules themselves contemplate that the procedure they authorize will itself be used to limit and narrow the issues. Indeed, if this were not done in cases such as the case at bar the deposition-discovery proceedings would become practically endless.

Under Rule 26(b), F.R.C.P., a deponent on pre-trial deposition may be examined "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party or to the claim or defense of any other party, * * * ."

As Judge Weinfeld said in Kaiser-Frazer Corp. v. Otis & Co., D.C.S. D.N.Y., 11 F.R.D. 50, 53;

" 'Relevant' as used in Section 26 (b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., is not to be equated with 'relevant' as ordinarily used in determining admissibility of evidence upon a trial. * * * Thus it is relevancy to the subject matter which is the test and subject matter is broader than the precise issues presented by the pleadings. * * * "

See, also, Hercules Powder Co. v. Rohm & Haas Co., D.C.D.Del., 3 F.R.D. 302, 304; Rose v. Bourne, Inc., D.C.S.D.N.Y., 15 F.R.D. 362.

The scope of examination on deposition is not limited to testimony which might be admissible at the trial but includes inadmissible testimony "reasonably calculated to lead to the discovery of admissible evidence." Rule 26(b). Kaiser-Frazer Corp. v. Otis & Co., supra; Engl v. Aetna Life Ins. Co., 2 Cir., 139 F.2d 469, 472; 4 Moore, Federal Practice, (2d ed.) ¶ 26.16.

Where, as here, the witness being examined is an officer, director or managing agent of an adverse corporate party, the party calling him may "interrogate him by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party, * * * ." Rules 26(c), 43(b), F.R.C.P.; 4 Moore, Federal Practice, (2d ed.) p. 1066–7. The questioning of such a witness may be used to further all of

the basic purposes of pre-trial discovery procedure including narrowing the issues so as to determine what matters are actually controverted and eliminating from the trial matters on which there is no real dispute. In furtherance of such purposes the witness may be questioned concerning the position of the adverse party with respect to matters in controversy. 4 Moore, Federal Practice, (2d ed.) ¶ 26.34; 2 Barron & Holtzoff, Federal Practice & Procedure, pp. 263, 316.

■ The deposition-discovery rules "are to be accorded a broad and liberal treatment" so that parties may obtain "the fullest possible knowledge of the issues and facts before trial." The examination authorized is sweeping and the inquiries are limited only by the requirement that they be reasonably relevant to a sensible investigation. Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451; Laurens Mills v. John J. Ryan & Sons, D.C.S.D.N.Y., 14 F.R.D. 191; Sunbeam Corp. v. R. H. Macy & Co., D.C.S.D.N.Y., 12 F.R.D. 323; Provisional Government of French Republic v. Tower's Warehouse, D.C. S.D.N.Y., 11 F.R.D. 291; Engl v. Aetna Life Ins. Co., supra; Kaiser-Frazer Corp. v. Otis & Co., supra; 4 Moore, Federal Practice, (2d ed.) ¶¶ 26.16, 26.18.

With these general principles in mind I turn to the subject matter of the action as bearing on the scope of the examination to be permitted.

This is a massive action in which plaintiffs charge a continuing conspiracy in restraint of trade of great magnitude and complexity extending over a period of more than 22 years, among the principal major motion picture producers, distributors and exhibitors in the United States. The subject matter of the action is the effect of this conspiracy upon the exhibition of motion pictures in the New York metropolitan area, and the specific means and methods by which it is alleged to have carried out its objectives there. In addition to reliance upon the violations of the anti-trust laws which were the subject of United States v. Paramount Pictures, Inc., supra, plaintiffs charge that the defendants engaged in a wide variety of acts and practices designed to restrain trade and monopolize the exhibition of motion pictures in the New York metropolitan area which the complaint defines as consisting not only of the City of New York, but also Westchester, Rockland, Nassau and Suffolk Counties, and the portions of Northern New Jersey within fifty miles from New York City. The conspiracy is alleged to have affected 47 substantial theatre properties owned or operated by plaintiffs in this area. It was allegedly carried out by enhancing the theatre interests of RKO, Loew's and Warner, who maintained circuits of theatres here, at the expense of plaintiffs' theatres so as to destroy or impair their ability to compete with RKO, Loew's and Warner. This group, in combination with the other defendants engaged in the nationwide conspiracy which is the subject of the Paramount case, are alleged, among other things, to have forced plaintiffs to maintain fixed theatre admission prices, imposed unreasonable clearances against plaintiffs' theatres in favor of affiliated theatres and compelled them to feature pictures for lengthy, extended and staggered runs; to have bought feature films in excess of their needs so as to deprive plaintiffs of such features for unreasonable periods of time; to have charged plaintiffs unreasonably high, arbitrary and discriminatory film rentals; to have forced plaintiffs to pool the operation of certain of their theatres with theatres owned by RKO, Loew's or Warner; to have forced plaintiffs to grant RKO interests in certain of their theatres; and to have deprived plaintiffs' theatres of the right to exhibit motion pictures on first neighborhood run without any clearance in favor of theatres operated by RKO, Loew's or Warner. The means used to accomplish these results were alleged to involve, among many other things, machinations in connection with the corporate reorganization of Fox

Metropolitan Theatres and other complicated corporate manipulations. The damages claimed are over one hundred million dollars.

Much the same sort of continuing conspiracy on the part of the plaintiffs and added defendants is charged in the counterclaim and cross-claim of defendant RKO Keith-Orpheum Theatres, Inc., which charges that such conspiracy affected 14 theatre properties operated in the metropolitan area by this defendant. These 14 theatres, added to the 47 referred to in the complaint, makes a total of 61 theatres directly involved in the litigation. Moreover, the counterclaim brings in as added defendants and alleged co-conspirators the three Skouras brothers individually, who are alleged to dominate and control the Skouras theatre empire which is said to have the largest combined seating capacity of any theatre operating group in the country.

George Skouras, the witness under examination, is not only the president of the principal corporate plaintiff, and one of its major stockholders, but he is alleged to be one of the dominant figures in the Skouras theatre complex and concededly is one of the major figures in the country in the operation of motion picture theatres and the licensing and exhibition of pictures. He has been a prime actor in the events involved in this litigation since 1931, or before. He has interests and connections in conjunction with his brothers in many motion picture enterprises throughout the country concerned with the production, licensing and distribution of pictures as well as their exhibition. The extent to which his activities in these fields, either individually or through his corporate enterprises, bear upon the present litigation, have not been defined with any precision and at this stage it is almost impossible for such definition to be made.

It is scarcely necessary to go further to show the extraordinarily broad scope and complexity of the subject matter with which we are concerned here, or to demonstrate that even if the standards of relevancy were to be reasonably restricted, the examination would necessarily have to be extremely broad.

Most of the 422 questions to which objection has been taken seem to me to be plainly within the scope of this broad subject matter. By far the larger proportion of them lend themselves to inclusion within groups dealing with substantially similar subjects. I will first discuss the considerations applicable to the questions which fall into such groups. I will then rule on the various specific objections made and in the course of such rulings will discuss such other pertinent considerations as have not been sufficiently dealt with generally.

## I.

*Questions relating to clearances by Skouras theatres over independent theatres and the factor of substantial competition between such theatres.*

The majority of the questions objected to deal in one way or another with the subject of clearances between the Skouras theatres in the metropolitan area and independent theatres in the same area—that is to say, theatres not affiliated with any of the plaintiffs or defendants.

Clearances and runs have been defined by the Supreme Court in United States v. Paramount Pictures, supra, as follows (334 U.S. 144, 68 S.Ct. 923 (note 6)):

"A clearance is the period of time, usually stipulated in license contracts, which must elapse between runs of the same feature within a particular area or in specified theatres.

"Runs are successive exhibitions of a feature in a given area, first-run being the first exhibition in that area, second-run being the next subsequent, and so on, and includes successive exhibitions in different theatres, even though such theatres may

be under a common ownership or management."

The plaintiffs object to all questions dealing with the subject matter of clearances between Skouras and the independents upon the ground that the issues in the action concern only the reasonableness of clearances between Skouras theatres and theatres operated by the defendants, and that clearances between Skouras theatres and the independents are in no way relevant to such issues. I cannot agree.

Basic to the question of whether a clearance between one of plaintiffs' theatres and one of defendants' theatres is reasonable, is whether the theatres were in substantial competition, or, to put it another way, whether such clearances had relation to the competitive factors which might justify them. United States v. Paramount Pictures, supra, D.C.S.D. N.Y., 66 F.Supp. 343–346; 334 U.S. 146–147, 68 S.Ct. 923–924.

It seems to me that the clearance taken by a Skouras theatre over an independent in the same area in which plaintiffs claim that one of the defendants' theatres took an unreasonable clearance over the Skouras theatre is plainly relevant to the reasonableness of the latter clearance. Whether such clearances are reasonable or not depend upon such matters as the area from which the respective theatres draw their patrons, where the patrons come from, and whether the respective theatres draw upon the same patrons or groups of patrons or any reasonable or substantial number of them. Moreover, if a clearance taken by a Skouras theatre over independents in the same area is comparable with the clearances alleged to have been taken by defendants' theatre over Skouras, this may bear on the reasonableness of the latter. Furthermore, such evidence bears on whether or not the Skouras theatre regarded itself as being in substantial competition with the independent, and this in turn bears upon whether there was substantial competition between the Skouras theatre and the defendants' theatre.

The factors which determine whether a clearance is unreasonable include such matters as the character and location of the theatres involved, their size, type of entertainment, appointments, transit facilities, etc., their policy of operation, the extent to which the theatres involved competed with each other for patronage, the methods used to attract patrons, the admission prices charged, and numerous similar matters. Many of these may be affected by what is done by a theatre vis-a-vis what it conceives to be its competitors in the area, whether they be independent or not.

In Fanchon & Marco v. Paramount Pictures, D.C.S.D.Calif., 100 F.Supp. 84, affirmed 9 Cir., 215 F.2d 167, certiorari denied, 348 U.S. 912, 75 S.Ct. 293, 99 L. Ed. 715, evidence of the clearance taken by the plaintiff over certain subsequent run theatres in adjacent areas was held to be relevant upon the question of the reasonableness of clearances which the plaintiff claimed had been imposed upon him. The court said, 100 F.Supp. 94:

"* * * However, his [plaintiff's] participation in the first-run scheme, as applied to the Los Angeles area, may be taken into consideration in determining the reasonableness of the scheme. For it is unlikely that one would *willingly* take part in a procedure, then attack it as unreasonable when applied to him elsewhere."

Indeed, in the course of the discovery proceeding discovery by interrogatory was permitted as to clearances taken by plaintiff over others. As Chief Judge Yankwich, who tried the case, stated in his commentary on the Report adopted by the Judicial Conference previously referred to (13 F.R.D. 54):

"As the crucial point in the case related to clearances, the plaintiff was compelled to answer all interrogatories and requests for admissions relating not only to the theatre in

question, as to which it complained, but also, as to other theatres which it operated in the Los Angeles area and as to which contracts relating to clearances existed."

There seems to be every reason why the defendants should be permitted as broad a latitude here. Indeed, in view of the fact that the issues in the case at bar as to clearances are much wider and more complex than those in Fanchon & Marco, even wider latitude on this subject might well be allowed.

Plaintiffs' reliance on Vilastor Kent Theatre Corp. v. Brandt, D.C.S.D.N.Y., 18 F.R.D. 199, and T. C. Theatre Corp. v. Warner Bros. Pictures, D.C.S.D.N.Y., 16 F.R.D. 173, is misplaced.

In Vilastor plaintiff was suing under the anti-trust laws for deprivation of second runs in Yonkers, and its officers had testified on deposition that it had never sought or requested first run rights. It sought the production of records of defendant's first run theatres in Yonkers. The court held that such records were not relevant under the issues formulated, that good cause for their production had not been shown, and that they need not be produced.

In T. C. Theatre [16 F.R.D. 175] plaintiff also complained only of denial of second runs to its theatres in Mt. Vernon. It sought interrogatories as to the "affairs and transactions" of defendant's first run theatres in that city. The court held that the material sought was not relevant to the sole and limited issue of deprivation of second runs.

These cases, unlike the case at bar, presented a single limited issue. They do not appear to have involved the reasonableness of clearances nor the question of whether the theatres were in substantial competition. Indeed, if they had it seems probable that the court would have permitted the discovery sought. Moreover, plaintiffs' argument that theatres over which a Skouras theatre took clearance played a later run not in issue here, overlooks the fact that similar clearances alleged to have been required of Skouras theatres by defendants' theatres are acts of which plaintiffs themselves complain. Plaintiffs' own practices in parallel situations surely may have a bearing, in some measure, on their claims that defendants' conduct was unreasonable.

Of course, such inquiries must be confined to the geographical area involved. See Maple Drive-In Theatre Corp. v. Radio-Keith-Orpheum Corporation, D.C. S.D.N.Y., 153 F.Supp. 240; Bordonaro Bros. Theatres v. Loew's, Inc., D.C.W.D. N.Y., 7 F.R.D. 210. But it has not been demonstrated to me that defendants' inquiries have gone unreasonably beyond the geographical area involved in this law suit. Cf. Hopkinson Theatre v. R.K.O. Radio Pictures, D.C.S.D.N.Y., 18 F.R.D. 379, 383.

The subject of whether substantial competition existed between Skouras theatres and independent theatres in the same area is on much the same footing. This subject matter bears on the issue of whether the Skouras theatres and defendants' theatres were in substantial competition and whether they drew patrons or groups of patrons from overlapping areas. I do not well see how the competitive situation between two theatres in a geographical area can be adequately explored without going into the competitive situation between those theatres and other theatres in the same area.

Moreover, even if it were determined, after inquiry, that such evidence was not relevant on these matters, such a determination could scarcely be made prior to inquiry merely on the plaintiffs' assurances that it would not be relevant. Defendants are entitled to determine whether such evidence is relevant or not—in other words, to discover whether admissible evidence exists.

## II.

*Questions as to factors which bear on the competitive situation between theatres in a given area.*

Plaintiffs have objected to a substantial number of questions directed

to such matters as the population density, ease of accessibility, public transportation, appointments, advertising and operating policies of the theatres involved, draw areas, character and location of stores and shopping centres and similar matters. All these are factors in determining whether substantial competition exists between plaintiffs' and defendants' theatres. United States v. Paramount Pictures, supra, D.C., 66 F. Supp. 343–346; 334 U.S. 145–146, 68 S.Ct. 923. They are thus clearly relevant.

The mere fact that such matters are of general public knowledge, or, indeed, within the knowledge of the examining party, does not bar inquiry on them. 4 Moore, Federal Practice, (2d ed.) ¶ 26.21, and numerous cases there cited. If they do nothing else, admissions as to such facts may serve to limit the area of dispute and to eliminate the necessity for the introduction of evidence as to such facts at the trial.

### III.

*Questions as to the relationships between plaintiffs and added defendants and one another and their practices, dealings and transactions through or with other segments of the motion picture industry.*

This is a difficult area in which to draw reasonable lines between questions designed to adduce evidence for use at the trial or reasonably calculated to lead to the discovery of such evidence and those which pursue issues collateral at best and lead down irrelevant bypaths.

■ (a) A number of questions falling within this category deal with arrangements between the three Skouras brothers for the pooling and division of their income from their various motion picture enterprises. Since the Skouras brothers are alleged to control the plaintiff corporations, and dominate a large segment of the industry, and are also named as added parties defendants and alleged co-conspirators in the counter-

claim of RKO Keith-Orpheum, it can scarcely be said at this stage that full exploration of these arrangements will not produce evidence or lead to the discovery of evidence either respecting the charges made in the complaint or the subject matter of the counterclaim. Indeed, the counterclaim expressly alleges that the Skouras brothers' agreement for pooling income was in furtherance of the conspiracy charged.

■ (b) A number of questions relate to pooling arrangements made by plaintiffs or added defendants not relating to the geographical area involved here and covering a period of time extending back prior to the commencement of the conspiracies alleged in the pleadings. One of the charges made in the complaint is that defendants forced plaintiffs to enter into unfair and unconscionable pooling arrangements with certain of defendants' theatres. Similar charges against the plaintiffs and added defendants are made in the counterclaim.

Plainly the subject of the pooling arrangements into which one set of parties are alleged to have been coerced by the other set are germane. The plaintiffs argue that defendants must confine themselves to these and that they may not examine with respect to any pooling arrangements which are not directly the subject of allegations of the pleadings.

Certainly inquiries on this subject matter must be kept within reasonable bounds. Otherwise the temptation to embark on a wholesale investigation of the American film industry from its beginnings may prove irresistible and the record will assume quite unmanageable proportions.

Nevertheless, it appears that any and all pooling arrangements made by the parties in the New York metropolitan area, either among themselves or with strangers to the litigation, during the period of the alleged conspiracies are within the proper scope of inquiry. In addition, the defendants should be permitted to inquire as to any pooling ar-

rangements made by plaintiffs and added defendants with one another, wherever they may have taken place, within the same period. Such inquiries may produce evidence bearing on the question of whether plaintiffs entered into the pooling arrangements alleged in the complaint under coercion, as they allege, or voluntarily, and whether such arrangements were reasonable or unreasonable.

However, inquiry will not be permitted at this time, at least, with respect to pooling arrangements outside the metropolitan area other than those made between the parties themselves, nor as to any pooling arrangements made during periods not covered by the complaint or counterclaim.

[10] (c) A number of questions are directed to the plaintiffs' connections and dealings with Fox Metropolitan Playhouses, and the reorganization of that company. The complaint charges that certain of the co-conspirators entered the reorganization proceedings of Fox Metropolitan "for the purpose of eliminating Skouras Theatres Corporation as a competitor in the New York metropolitan area," and that, in furtherance of these objects RKO acquired a substantial portion of the stock of Fox. Questions as to any interests Skouras acquired in Fox, how such interests were acquired, and the extent to which Fox was a threat to the Skouras interests, are plainly relevant to the issues raised by these allegations.

■ (d) Questions concerning interlocking of interests between United Artists Theatre Circuit, Inc. and the Skouras complex, are plainly relevant. George Skouras has concededly been president of both corporations and there appear to be other interlocking relations between the two. There is also claimed to be interlocking in turn between United Artists Theatre Circuit, Inc. and defendant United Artists Corporation and added defendant Twentieth Century Fox Film Corporation during at least part of the period in suit. Moreover, United Artists Theatre Circuit is claimed to

have had a substantial connection with the plan of reorganization of Fox Metropolitan Playhouses and to have had a 50% stock interest in Metropolitan Playhouses, Inc. It has not been made apparent to me why these relationships between plaintiffs and a corporation which is claimed to have interlocking relationships with a defendant and added defendant, and to have been deeply involved in a reorganization of which plaintiffs complain, should not be explored. Inquiries on this subject may well be a fruitful source of evidence, or, in any event, lead to the discovery of evidence.

Plaintiffs cannot well expect to embark on a litigation involving complicated intercorporate relationships without exposing themselves to a reasonable exploration of their own intercorporate relationships of this alleged character.

## IV.

*Questions relating to the settlement made by plaintiffs with defendant Loew's, Incorporated.*

■ Plaintiffs object to several questions relating to the terms of an agreement whereby this action was settled and dropped as to the defendant Loew's Incorporated and the negotiations leading to such settlement. The amended complaints charge that Loew's was a member of the conspiracy alleged and participated in the acts of which plaintiffs complain.

It is generally true, as plaintiffs urge, that a settlement with a stranger of a dispute arising out of the same facts involved in a subsequent suit is not evidence of an admission of liability or of any other fact involved in the prior suit. Winkler-Koch Engineering Co. v. Universal Oil Products Co., D.C.S.D.N.Y., 79 F.Supp. 1013, 1019. But that is not the situation here. The plaintiffs' settlement with an alleged co-conspirator of the very lawsuit which charges the conspiracy, may be inquired into by other co-conspirators and co-defendants. Such inquiries may produce important evidence

as to the nature and effect of the conspiracy charged, as well as on the question of damages. Plaintiffs cannot expect to lop off the alleged conspirators one by one and at the same time prevent the parties whom it has alleged were partners in the illegal enterprise from discovering what arrangements plaintiffs have made with their former alleged partner.

Moreover, the inquiries may relate both to the agreement of settlement itself and all the terms and conditions thereof and also to the negotiations which led to the settlement. For admissions made in the course of such negotiations are not necessarily excluded from evidence if they are explicit and absolute. West v. Smith, 101 U.S. 263, 273, 25 L.Ed. 809; White v. Old Dominion S. S. Co., 102 N.Y. 660, 6 N.E. 289; Bradley v. McDonald, 218 N.Y. 351, 113 N.E. 340; Mannella v. City of Pittsburgh, 334 Pa. 396, 6 A.2d 70; IV Wigmore on Evidence (3d ed.) § 1061.

## V.

*Questions calling for the opinion, judgment or conclusion of the witness, or relating to the nature and scope of plaintiffs' contentions.*

 A large number of questions to which objection has been taken call directly or indirectly for the opinion, judgment or conclusion of the witness as to matters such as the reasonableness of clearances, the fairness of prices charged, the existence of substantial competition between various theatres, the factors which determine whether such competition exists and similar matters. Apart from the objection that much of the subject matter of these questions is irrelevant, which is disposed of elsewhere, plaintiffs also object on the ground that questions calling for an opinion or conclusion are improper on a deposition and should not be allowed. This is not in accord with what seems to me to be the more enlightened view.

This view is stated in 4 Moore, Federal Practice, (2d ed.) ¶ 33.17, in discussing permissible interrogatories, as follows:

"* * * it would be unfortunate if a rigid rule were applied to the effect that interrogatories as to matters of opinion are barred, regardless of whether or not an answer might expedite the litigation by limiting the subjects of controversy and by avoiding unnecessary testimony. If the answer might serve some legitimate purpose, either in leading to evidence or in narrowing the issues, and to require it would not unduly burden or prejudice the interrogated party, the court should require answer."

As Judge Dimock said in Caldwell-Clements, Inc. v. McGraw-Hill Publishing Co., Inc., D.C.S.D.N.Y., 12 F.R.D 531, 544:

"In classifying, the difference between facts, opinions and contentions is of course a matter of degree. Although interrogatories requiring the expression of opinion and contentions have in some decisions been stricken, it has been recognized that many such rulings have gone too far and can tend to defeat the purposes of the deposition-discovery rules."

In Gagen v. Northam Warren Corp., D.C.S.D.N.Y., 15 F.R.D. 44, at page 46, Judge Weinfeld said, on the same subject:

"It may be acknowledged that to a degree the interrogatories in question call for expression of judgment or opinion. However, this in and of itself does not condemn them if the basic purposes of deposition-discovery procedure—obtaining relevant information and narrowing the issues—are to be served. * * *"

There are other cases to the same general effect. See Taylor v. Sound Steamship Lines, D.C.Conn., 100 F.Supp. 388; Pappas v. Loew's, Inc., D.C.M.D. Pa., 13 F.R.D. 471; Kendall v. United Air Lines, Inc., D.C.S.D.N.Y., 9 F.R.D. 702; Sachs v. Aluminum Co. of America, 6 Cir., 167 F.2d 570; Moran v. Pittsburgh-Des Moines Steel Co., D.C.W.D.Pa., 6

F.R.D. 594. Moreover, questions which call for expert opinion concerning the subject matter in litigation are proper when asked of an officer or employee of a defendant who is himself an expert in the field and familiar with the subject matter. Kendall v. United Air Lines, Inc., supra; Moran v. Pittsburgh-Des Moines Steel Co., supra.

The witness George Skouras is plainly an expert in the field of motion picture exhibition and has been one of the leading figures in the country in that field for many years. As the directing head of the principal plaintiff he can be assumed to be familiar with many of the factors and problems involved in the operation of plaintiffs' theatres in the New York area with which this litigation is concerned. He also, for all practical purposes, speaks for the principal plaintiff.

Questions asked of this witness as to his opinion or judgment on reasonableness of clearances, existence of substantial competition between theatres, factors in determining substantial competition and similar matters, may well serve a useful function in narrowing the issues, limiting the subjects of controversy and avoiding unnecessary testimony at the trial. Such questions will be allowed where they deal with relevant subject matter.

This is not to say that all questions calling for conclusions or characterizations by the witness are allowable. Some, which do not appear to serve the purposes of deposition-discovery procedure to which I have just referred, are plainly objectionable, as will be indicated in my rulings on specific questions.

Questions relating to the nature and scope of the plaintiffs' contentions are clearly within the purposes of the deposition-discovery procedure since they serve to narrow and define the issues. In the absence of any attempt thus far to limit or define the issues such questions seem highly appropriate. 4 Moore, Federal Practice, (2d ed.) ¶ 33.17.

## VI.

*Questions designed to impeach the witness or cast doubt on the good faith of plaintiffs in making the claims which are the subject of the action.*

Plaintiffs have objected to a number of questions upon the ground that their only purpose could be to impeach the witness and that they are therefore improper. Such objections, in the main, are not well taken. An officer of an adverse party called as a witness on deposition may be impeached by the party calling him and inquiry may be made as to matters affecting his credibility or as to facts which might be used in cross-examining him at a trial. Rules 26(c), 43(b), F.R.C.P.; 4 Moore, Federal Practice, (2d ed.) ¶ 26.26 and p. 1066. Lynch v. Henry Pollak, Inc., D.C.S.D.N.Y., 1 F.R.D. 120, on which plaintiffs rely, relates to inquiries to be made of a witness who was not an adverse party, or an officer of an adverse corporate party, for the sole purpose of obtaining information to impeach another witness collaterally. It does not apply here.

Questions relating to the bona fides of plaintiffs' claims that a conspiracy existed, such as those concerning complaints made by plaintiffs or their officers to Government officers or assistance rendered to the Government in the course of the Paramount case, are plainly proper. Whether or not plaintiffs, knowing that the Paramount prosecution was pending, took steps to bring the facts to the attention of the prosecuting authorities may bear on whether they then knew or believed the conspiracy to exist or had felt the effects of it, matters of some importance here. If they did bring facts to the attention of the Government or testified, the questions may lead to the discovery of evidence.

---

Before passing to rulings on specific questions it should be said that both the preceding general discussion and specific

rulings made should be taken as guides to counsel throughout the future course of the depositions to be taken in this litigation.[1]

The 422 questions which are the subject matter of the four motions before me have been placed in lettered and numbered categories in plaintiffs' main brief. Since this is the only place where all the questions at issue are assembled I will use these categories and this numbering in making my specific rulings, without, however, adopting plaintiffs' descriptions or characterizations of the various categories.

### The RKO Theatres Motion

*Question 1.* Objection sustained as to form. The question embraces several inquiries in one, though each subject matter may be pursued by questions in proper form.

*Questions 2 and 3.* Objections overruled. These questions do not call for the constructions of written agreements as the objections assume, but rather what it was contemplated should be done or what was done under them.

*Question 4.* Objection sustained on the ground that the question appears to have been already fully answered.

*Questions 5 and 6.* Objections sustained. Question 5 calls for characterization of the contents of a document. Question 6 has already been answered in substance.

*Question 7.* Objection sustained as to form. The question calls for an unwarranted characterization by the witness.

*Question 8.* Objection overruled. See discussion under III(a), supra.

*Question 9.* Objection withdrawn. Plaintiff has agreed to produce the document requested.

*Question 10.* Objection overruled. See discussion under IV, supra.

*Question 11.* Objection overruled. See discussion under I and V, supra. The Pickwick Theatre in Greenwich cannot be said to be so unreasonably removed from the geographical area involved here as to make the question objectionable on that ground.

*Question 12.* Objection overruled. There is no reason why the witness should not testify as to whether he did or did not consent to extend the franchise under these terms and conditions.

*Question 13.* Objection sustained. See Winkler-Koch Engineering Co. v. Universal Products Co., D.C.S.D. N.Y., 79 F.Supp. 1013, 1019, supra.

*Question 14.* Objection overruled. See discussion under VI, supra.

### The Columbia Motion

*Question 15.* Objection sustained as to form since the question appears to misstate the terms of the agreements referred to. However, the subject matter of the question is plainly relevant. See discussion under III (a), supra.

*Questions 16 and 17.* Objections overruled. See discussion under VI, supra.

*Questions 18 and 19.* Objections overruled. The questions, relating to fixing the time when the conspiracy is claimed to have commenced, are proper on cross-examination of the witness. The amended complaints allege that the conspiracy has been going on "since prior to 1931."

*Question 20.* Objection sustained. This question is entirely too broad. See discussion under III(b), supra.

---

1. It seems likely that the progress of the examinations will be facilitated and the parties and the court relieved of substantial and perhaps unnecessary burdens by the designation of a special master with power to supervise the conduct of the depositions and to rule on objections to questions under Rule 32(c) and other applications for relief in connection with the examinations subject to review by the court. See Rule 53, F.R.C.P.; 4 Moore, Federal Practice, (2d ed.) ¶ 26.38.

*Question 21.* Objection overruled. See discussion under IV, supra.

*Question 22.* Objection overruled. Defendants are entitled to inquire as to the familiarity of the witness with the complaint even in general terms. They may then turn from the general to the specific.

### The Warner Motion

*Question 23.* Objection overruled. Since the complaint makes frequent references to pools and pooling agreements, there seems to be no good reason why the president of the principal plaintiff should not be asked to define such terms and thus aid in defining the issues. See also discussion under V, supra.

*Questions 24 a, b, c, d, and e.* Objections sustained upon the ground that questions are too broad in scope. But see discussion under III(b), supra.

*Question 25.* Objection sustained on same grounds as No. 24. This subject matter is entirely too remote from the issues here.

*Questions 26(a) and 26(b).* Objections overruled. These questions deal with theatres in Northern New Jersey in the area involved in the present suit which were operated by the witness for one of the defendants. They may bear on the credibility of the witness and also on the factual situation in this area at the time the conspiracy is alleged to have begun.

*Question 27.* Objection overruled. See discussion under III(c), supra.

*Question 28.* Objection sustained. See discussion under III(d), supra.

*Question 29.* Objection overruled. See discussion under III(c) and V, supra.

*Question 30.* Objection overruled. See discussion under VI, supra.

*Question 31.* Objection overruled. See discussion under III(d) and V, supra.

### The Paramount and RKO Motion

#### Category 1.

*Group A—Questions 32–170.* Objections overruled. See discussion under I, supra.

*Group B—Questions 171–202.* Objections overruled. See discussion under I and V, supra.

#### Category 2.

*Questions 203–261.* Objections overruled. See discussion under I and V, supra.

#### Category 3.

*Group A—Questions 262–279.* Objections overruled. See discussion under II and V, supra.

*Group B—Questions 280–294.* Objections overruled. See discussion under II, supra.

*Group C—Questions 295–309.* Objections overruled. See discussion under I, II and V, supra.

*Group D—Question 310.* Objection overruled. The witness does not appear to have given a responsive answer to this question.

*Questions 311, 312, 312 b.* Objection sustained. These questions have already been answered in substance.

#### Category 4.

*Group A—Question 313.* Objection overruled. The question may bear on damages, a proper subject of inquiry. 4 Moore, Federal Practice (2d ed.) ¶ 26.18; Smith v. Bentley, D.C.S.D.N.Y., 9 F.R.D. 489.

*Questions 314 a–g.* Objections sustained. It has not been made apparent to me why questions relating to checks allegedly endorsed by Judge Manton are relevant here.

*Group B—Question 315.* Objection overruled. The question relates to the amount received on condemnation of one of the plaintiffs' theatres involved in this litigation. It may bear on the question of damages.

*Group C—Questions 316 and 317.* Objections overruled. See discussion under II, supra.

*Group D—Questions 318–325.* Objections overruled. See discussion under II and V, supra.

*Group E—Questions 326–334.* Objections sustained. These questions are said by defendants to relate solely to the question of damages. They therefore do not come within the discussion under I, supra. They appear to me to be entirely too remote from the issues to be relevant at this time.

*Group F—Questions 335–363.* Objections overruled. See discussion under I and II, supra. The fact that some of the questions are general in nature does not render them objectionable if their subject matter is relevant. If the witness does not know any of the answers he can say so.

*Group G—Question 364.* Objection sustained on the ground that no proper foundation has been laid. If proper foundation is laid the question is unobjectionable.

*Category 5.*

*Questions 365–368.* Objections overruled. See discussion under I and V, supra.

*Category 6.*

*Group A—Questions 369–372.* Objections overruled. These questions bear on the nature and extent of plaintiffs' contentions and may aid in limiting the issues. See discussion under V, supra.

*Group B—Question 373.* Objection overruled. It has not been made apparent to me that this question is irrelevant in the light of the discussion under II, supra.

*Category 7.*

*Group A—Questions 374–406.* Objections sustained. These questions relate to five new Long Island theatres which were not in operation during the period covered by the complaints. I fail to perceive their relevance.

*Group B—Questions 407–420.* Objections overruled. See discussion under III, supra.

*Group C—Questions 421–422.* Objections overruled. See discussion under V, supra.

---

The four motions of various defendants to compel the witness Skouras to answer questions asked him on deposition are granted to the extent indicated in this opinion and denied otherwise. The witness is directed to answer all questions as to which objections have been overruled and such other questions as have been approved by these rulings.

Settle order on 15 days' notice.