**KAISER–FRAZER CORP. v. OTIS & CO.**

United States District Court
S. D. New York.

Jan. 20, 1951.

See also 8 F.R.D. 364.

Willkie, Owen, Farr, Gallagher & Walton, New York City, Mark F. Hughes, Helmer R. Johnson, New York City, of counsel, for plaintiff.

Ben Herzberg, New York City, for defendant.

WEINFELD, District Judge.

The plaintiff moves to obtain twofold relief, (1) an order vacating a notice by the defendant to take the depositions of members of the staff of the Securities and Exchange Commission; and (2) vacating a notice by defendant to take the depositions of fourteen persons residing variously in California, New Mexico, Colorado, Texas, Oklahoma and Kansas.

A third motion made by the Securities and Exchange Commission for an order quashing the subpoenas served upon the Commission to appear by the aforementioned persons insofar as they are in the nature of subpoenas duces tecum was consented to.

The action is to recover $19,000,000 for (1) breach of an underwriting agreement whereby defendant and two others agreed to purchase from plaintiff certain shares of its common stock; and (2) inducing one of the underwriters to breach said agreement.

No extended analysis of the pleadings is required except to note that one of the affirmative defenses is that plaintiff breached a representation and warranty contained in the underwriting agreement to the effect that neither the Registration Statement nor the Prospectus, which plaintiff was required to file under the Securities Act of 1933, 15 U.S.C.A. §§ 77a to 77aa, before making a public offering of the stock, would contain any false statement or omit any material fact. Insofar as pertinent to the present motions, it is claimed that the Prospectus was false and misleading through the omis-

sion of material matter in two respects, (1) as to earnings and sales; and (2) selling methods and problems and relations of plaintiff with its distributors and dealers.

### Motion to Vacate the Examination of Representatives of the Securities and Exchange Commission

The nub of this motion is related to the first alleged misrepresentation referred to above and concerns statements appearing on page 7 of the Prospectus as to Kaiser-Frazer's sales and earnings.

The plaintiff was organized in 1945 to engage in the manufacture of automobiles but did not get into production until late 1946 and reached substantial volume of production in the second quarter of 1947.

The closing set for February 9th, 1948, did not take place because of an alleged breach of the underwriting agreement by plaintiff (other than that referred to above). The Prospectus is dated February 3rd, 1948.

According to the defendant, prospective investors in plaintiff's stock would be concerned with the ability of the plaintiff, a new-comer in the automotive industry, to survive the keen competition known to exist in that field. It urges that sales during the scarcity period during and immediately following the war furnished no true criterion of survival power. What it says was important for investors to know were the true facts as to earnings, sales and progress of the infant company upon a return to normal competitive conditions when consumption and production were more evenly in balance.

The defendant contends that the prospectus issued by the plaintiff contains material misrepresentations or omissions as to its sales and earnings (page 7), based on the following: Net profit and loss figures are shown thereon separately for the first, second and third quarters of 1947, then for the two months ended November 30th, and finally for the last quarter of 1947. No separate breakdown for the

month of December 1947 is stated. This, it is claimed, is significant. The defendant urges that there is a clear implication that the December earnings were $4,009,-338, arrived as by deducting $9,406,478, the earnings for the months of October and November, from the total for the last quarter aggregating $13,415,861—at least so it is said an investor would determine that figure, carrying with it an implication of growth, expanded production and healthy progress on the part of the new-comer in the field. It is also claimed that the Prospectus was so set up commencing with the second quarter of 1947 and for the remainder of the year that earnings showed an upward trend.

The defendant asserts that the true state of affairs is that the earnings curve showed a downward trend starting in October 1947, at a time when other manufacturers were doing a thriving business; that the actual earnings of the company for December 1947 were $638,000; that the $4,009,338 amount so reflected for the month of December was the result of a net inventory writeup and year end adjustment of approximately $3,400,000 improperly credited in that month; that in fact, the subsequent audited figures revealed an actual loss for December 1947, before inventory writeups, adjustments and other charges properly allocable to that month.[1]

A footnote on page 7 of the Prospectus states "that the tentative information for the quarter and year ended December 31, 1947, reflects various substantial year end adjustments including provision for certain reserves and a material increase in inventories to conform to the results of the complete physical inventory taken by the corporation as of December 31, 1947." No amounts are stated. It is claimed that 15% of the total profit recorded for December 1947 resulted from earnings and 85% from inventory and other year end adjustments.

One William Werntz, an accountant employed by the plaintiff who had worked on the Registration Statement, was examined

---

1. The tentative information for the quarter and for the year ended December 31st, 1947, had been prepared by plaintiff from its books and records, without audit, on the basis of a preliminary 1947 closing made at January 23rd, 1948.

by the defendant in this action. His testimony is to the general effect that he made a full disclosure of all facts to certain SEC officials and representatives, including the amounts of the proposed year end adjustments, and that without such adjustments there had been substantially no profit or some loss in December; further, that the form of the footnote now appearing on page 7 of the Prospectus, which omits any reference to specific amounts of adjustments, was approved by them.

Defendant asserts that it will appear from the testimony of such SEC representatives that Werntz did not give the figures he now claims and suppressed the facts in securing the approval of the footnote. It is sought to examine three of the persons still with the SEC with whom Werntz testified he had the discussions.

The plaintiff resists the taking of the depositions on the ground that their testimony is "utterly irrelevant" and that the "government personnel should not be subjected to useless annoyance of having their testimony taken in a matter to which their testimony can contribute nothing." The latter objection—inconvenience and annoyance to the government personnel—dissolves in view of the Commission's position that if the motion to vacate the subpoenas duces tecum (consented to by the defendant) is granted, it will produce its officials to testify orally and answer any questions not privileged or otherwise objectionable.

There remains the objection that the proposed testimony is irrelevant. The basis of this contention is that under the Securities Act of 1933, the Commission does not assume responsibility for approving Registration Statements and Prospectuses filed with it—that it is merely a depositary for the information filed. Plaintiff further argues that the Prospectus must stand or fall on its own merits, that the individuals whose examinations are sought have no independent knowledge of plaintiff's affairs which would assist in determining whether the Registration Statement and Prospectus were true and complete or false and misleading, and finally that the opinions of the SEC representatives are "utterly irrelevant to any issue in the case."

True, the basic facts upon which the defense is predicated is a matter of independent proof. But what is sought is not the opinion of the SEC or its officials as to the truth or falsity of the Registration Statement or document but the facts as to the conversations and conferences between Werntz and the SEC representatives which preceded the form of the approved footnote. Plaintiff's position appears to be directed to the admissibility of evidence resulting from the examinations if offered upon the trial and in this it misconceives the scope of the deposition procedure. However, on this application that need not be and is not now determined—that is for the Trial Court.

"Relevant" as used in Section 26(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., is not to be equated with "relevant" as ordinarily used in determining admissibility of evidence upon a trial. This is clear from the very rule which permits the examination of any party or person "* * * regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party or to the claim or defense of any other party, * * *." Thus it is relevancy to the subject matter which is the test and subject matter is broader than the precise issues presented by the pleadings. Lewis v. United Air Lines Transport Corp., D.C., 27 F.Supp. 946. Moreover, it must always be borne in mind that the discovery-deposition procedure of the new rules is "* * * not merely for the purpose of producing evidence to be used at the trial, but also for discovery of evidence, indeed, for leads as to where evidence may be located. * * * Subdivision (b), therefore, extends much beyond sub. (d) in allowing examinations into matters which may not be admissible in evidence. * * *" Engl v. Aetna Life Ins. Co., 2d Cir., 139 F.2d 469, 472.

After the Engl case had been decided in 1943, various District Courts in other circuits took a different view and circumscribed the application of the rule. Thereafter on recommendation of the Advisory Committee on Amendments to Rules, 26(b)

was amended by adding the following sentence: "It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence."[2] This should set at rest any doubt as to the broad and liberal purpose intended by the deposition-discovery procedure.

The core of one of the defenses is the alleged breach of warranty with respect to earnings and sales and the trend of business. The inclusion of the footnote relating to year end adjustments as well as other matters allegedly the subject of consultation with and approval by the SEC representatives, with the claim that the amounts of the adjustments were stated to them, appears to be relevant to the "subject matter involved in the pending action."

■ It may well eventuate that evidence secured as a result of the depositions will be inadmissible upon the trial, or, perhaps, defendant will find the testimony disappointing, of little or no value in its defense or resistance to plaintiff's claim. On the other hand, the information may be of aid in preparing the defense or anticipating the testimony of Werntz and other witnesses called by the plaintiff or in cross-examining them, or there is a possible use of the deposition under Rule 26(d)(3).

If a purpose of the rules is the discovery of evidence or any other matter which may aid a party in the preparation or presentation of his case, then the defendant should have the means to obtain all the facts with respect to the circumstances attendant upon the inclusion of the footnote.

Accordingly, this aspect of the motion to vacate is denied.

### Motion to Vacate the Notice to Take the Depositions of Fourteen Witnesses

■ There remains for consideration the motion to vacate the notice to take the depositions of fourteen witnesses of whom nine are former dealers and one a former distributor of plaintiff's products; two are finance companies and two former employees. The proposed depositions all relate to the defense of the failure to disclose the selling and dealer distribution problems of the plaintiff.

In support of its motion plaintiff urges that the defendant has heretofore conducted extensive examinations of officers, directors, attorneys or financial advisers of plaintiff; that its records have been available to and inspected by the defendant's attorneys and accountants; that the defendant to date has examined two finance companies, twenty-two former distributors or dealers and three former field representatives of the plaintiff, all in categories similar to the group now proposed to be questioned; that such examinations generally have been unproductive of relevant evidence relating to the defendant's case and have failed to give information leading to the discovery of admissible evidence; consequently there is no need for the taking of the proposed depositions and that the continuing examinations of such persons are unreasonable and oppressive and the Court is requested to limit the examinations under Rule 30(b).

It is true that the defendant has already had extensive use of the deposition-discovery procedure but it asserts that it has not completed a planned program of cross-section examination of witnesses deemed essential to its defense and the preparation for trial. At the time of the issuance of the Prospectus the plaintiff had a total dealer and distributor organization in the United States numbering 3,474. The defendant has endeavored to meet its problem of proof with respect to the defense based on misrepresentation of selling problems by a nation-wide sampling process which would

2. The notes of the Advisory Committee which accompany the recommendation state: "The amendments to subdivision (b) make clear the broad scope of examination and that it may cover not only evidence for use at the trial but also inquiry into matters in themselves inadmissible as evidence or which will lead to the discovery of such evidence. The purpose of discovery is to allow a broad search for facts, the names of witnesses, or any other matter which may aid a party in the preparation or presentation of his case." 28 U.S.C.A.

be representative of dealers, distributors and finance companies throughout the country. The present group of witnesses is confined to the West and Southwest. Thus far the defendant has examined twenty-two dealers and distributors and if the proposed examination is permitted, it will bring the total questioned up to thirty-two—less than 1% of the entire number; examination of two additional finance companies will bring the total number up to four, and an inquiry of two former employees will bring the number in that category up to five. Considering the vast territory from which evidence is to be drawn in the preparation for trial, the number of dealers and distributors, the problems confronting the defendant in meeting plaintiff's claim and sustaining its defense, it does not appear at this point that the further examinations represent an oppressive situation calling for curtailment. The very fact that, as plaintiff's counsel contends, such previous testimony of the dealers, distributors and finance companies has been unproductive of relevant evidence relating to the defendant's case emphasizes the need rather than the elimination of the further examinations.

The motion to vacate the notice for taking of the depositions is denied.

Settle order on notice.