**UNITED STATES of America**

**v.**

**LEVER BROTHERS COMPANY and Monsanto Chemical Company, Defendants.**

United States District Court
S. D. New York.
March 31, 1961.

Lee Loevinger, Department of Justice, Washington, D. C., Larry L. Williams, Washington, D. C., of counsel, for plaintiff.

Arnold, Fortas & Porter, Washington, D. C., Abe Krash, William L. McGovern, Washington, D. C., of counsel, for defendant Lever Brothers Co.

Shearman & Sterling & Wright, New York City, Charles C. Parlin, Jr., New York City, of counsel, for defendant Monsanto Chemical Co.

Cahill, Gordon, Reindel & Ohl, New York City, James B. Henry, Jr., New York City, of counsel, for Colgate-Palmolive Co.

Royall, Koegel & Rogers, New York City, Kenneth C. Royall, New York City, of counsel, for Procter & Gamble Co.

IRVING R. KAUFMAN, District Judge.

This is an antitrust action brought by the government against Lever Brothers Company and Monsanto Chemical Company, in which the government contends that the purchase by Lever from Monsanto of certain assets connected with a synthetic detergent product known as "all" constituted a violation of Section 7 of the Clayton Act, 15 U.S.C.A. § 18.

On September 7, 1960, plaintiff served written interrogatories, calling for the production of certain documents, upon both The Procter & Gamble Company and the Colgate-Palmolive Company, competitors of Lever. As a result of negotiations between these companies and the government concerning the information requested by these interrogatories, stipulations were signed pursuant to which much of this information was furnished to the government. These stipulations were approved by the Court. (The order as to Procter & Gamble was dated November 14, 1960; the order as to Colgate was dated December 5, 1960.) Both orders contained a provision that the information was to be disclosed "solely to the Court, to counsel for the parties, and to those employed by the Court and counsel for the parties who have duties in connection with this action * * *." The orders further provided that "the persons to whom information in response to these interrogatories is disclosed shall treat such information as completely confidential and not to be disclosed to any other person unless and until otherwise ordered by the Court."

On January 11, 1961, Lever filed a motion under Rule 34 of the Federal Rules of Civil Procedure, 28 U.S.C.A. seeking production by the government of various documents, including the material which had been furnished to the government by Procter & Gamble and Colgate. A consent order providing for the production of these documents was agreed upon between the government, Lever and Monsanto, and was submitted to the Court.

However, on March 17, 1961, Procter & Gamble filed a motion pursuant to Rule 30(b) of the Federal Rules of Civil Procedure seeking (1) the return to it of the material which it had furnished the government pursuant to the November 14 order; or, (2) in the alternative an order limiting disclosure of this material to counsel for Lever and those employed by counsel, and prohibiting disclosure to any officers or other personnel of Lever. It is this motion which is now before the Court.

The documents involved in this motion can be subsumed under four basic categories: (1) Material indicating Procter & Gamble's domestic net sales, domestic net profits, and domestic net worth for the fiscal years ending from June 30, 1953 to June 30, 1958; (2) Copies of re-

ports furnished by Procter & Gamble to the United States Bureau of Census for the years 1953–58;[1] (3) Copies of reports submitted by Procter & Gamble to the Sales Census of the American Association of Soap and Glycerine Producers for the period from 1953 to 1958; (4) Copies of reports furnished by the A. C. Nielsen Company to Procter & Gamble for the period from 1953 to 1958.[1a]

Procter & Gamble's basic contention, with respect to these documents, is that disclosure of their contents to Lever, a competitor, would result in irreparable injury to Procter's competitive position in the soap and synthetic detergent products industry. Procter argues that armed with this information, a competitor could easily ascertain or estimate Procter's current sales, expenditures, profits, volume of production and product trends. Thus, Procter urges that these documents not be disclosed to Lever personnel. Lever, on the other hand, argues that disclosure will not result in any foreseeable injury to Procter, since the data involved is not current, and does not contain any breakdown by brand names. It urges further that this data is absolutely necessary to the preparation of its defense, and that an examination and evaluation of it by expert Lever personnel is necessary if the data is to have any meaningful significance to counsel in this preparation.

■ At the outset, it should be noted that the instant motion is addressed to the discretion of the Court. See Developments in the Law—Discovery, 74 Harv. L.Rev. 940, 1017 (1961). This discretion, however, should be exercised in a manner consonant with the liberal spirit of the Federal Rules of Civil Procedure, and specifically with the objectives of the liberal discovery provisions of these Rules. As the Supreme Court noted in Hickman v. Taylor, 1947, 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451, " * * * the deposition-discovery rules are to be accorded a broad and liberal treatment * * *. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." See generally 4 Moore, Federal Practice Sec. 26.02, at 1012–16 (2d ed. 1950).

■ In the instant case, it is apparent that Lever has made the necessary showing that the information and documents sought are not only highly material and relevant to the issues in the case, but also are absolutely necessary to the preparation of its defense.

This is an antitrust case which presents such complex and difficult issues as the delineation of the relevant market and the determination of whether the sale of assets in question may result in the requisite substantial lessening of competition. An informed resolution of these issues necessarily requires a somewhat detailed examination of sales and production data of Lever's two major competitors, Colgate and Procter & Gamble. As the government pointed out in its memorandum: "The material is not only relevant, but essential to the trial of this action. * * * To try a Section 7 case in the detergent industry without information concerning Procter & Gamble would be like trying an automobile industry case without information with respect to General Motors." Government's Memorandum, pp. 1–2. Similarly, the Court commented, in Service Liquor Distributors v. Calvert Distillers Corp., D.C.S.D.N.Y.1954, 16 F.R.D. 507, 509, that "in an action under the anti-

1. It has been held in this Circuit that the information furnished in these reports is not subject to any special immunity from discovery. See United States v. St. Regis Paper Co., 2 Cir., 1960, 285 F. 2d 607, certiorari granted 1961, 81 S.Ct. 825.

1a. Procter has indicated that it is withdrawing its objection to the unrestricted production of the Nielsen data. Its only objection to disclosure of this data was based on a contract between Procter and Nielsen providing that the data was to be kept confidential. But Nielsen has indicated that it has no objection to disclosure of this data to Lever personnel.

trust laws, based upon an alleged abuse of competition, a competitor's business records, where good cause has been shown, are not only not immune from inquiry, but they are precisely the source of the most relevant evidence."

It is equally clear that Lever's counsel should be permitted to discuss this data with company personnel. The information involved is of a nature which inherently requires discussion with expert personnel and those intimately familiar with the industry, to be meaningful. Expert analysis and comparisons will be a necessity if the defense of this action is to be adequately prepared.

Moreover, Procter & Gamble has not made the showing of serious and clearly defined injury which in some instances may require absolute and rigid restrictions on disclosure. Indeed, Procter's concern perhaps stems primarily from the fact that it is not a party to this litigation, and that merely as a third party, it is being asked to disgorge itself of what it considers to be important information. However, the framers of the discovery rules gave much thought and consideration to this facet of the problem, and concluded that the inconvenience caused to third parties in the federal courts was outweighed by the public interest in seeking the truth in every litigated case, with both sides better prepared, and the element of unfair surprise completely eliminated.

The data requested in the instant case does not involve secret processes or customer lists, categories which have traditionally been considered to be entitled to greater protection. See, e. g. American Oil Co. v. Pennsylvania Petroleum Prod. Co., D.C.D.R.I.1959, 23 F.R.D. 680,

684. See also In the Matter of H. P. Hood & Sons, Inc., Federal Trade Commission, Docket No. 7709 (March 14, 1961). In a recent case involving information of the nature sought here, the Court in United States v. Aluminum Co. of America, D.C.N.D.N.Y., 193 F.Supp. 249, 250, allowed full disclosure in a closely analogous situation and pointed out that

"Any prejudice or harm to be occasioned by the companies answering the questionnaire seems more theoretical than practical. The purpose of the action is to protect the public interest which definitely includes the interest of defendant's competitors. Approximate business statistics are available through investigating agencies and this court is of the opinion that under present business conditions production and sales figures are not a well kept secret from business competitors."

Further, the documents involved do not contain any current information; they cover primarily the period from 1953 to 1958.[2] In this connection, it is noteworthy that in the course of negotiations between the government and Procter which eventuated in the November 14 order, Procter objected most strenuously to the government's requests for more current data; these requests were thus withdrawn, and Procter agreed to produce the documents now in dispute. In addition, the sales, production, and profit figures do not contain breakdowns by brand names, the type of data which presumably would be most injurious if improperly used by a competitor.[3]

Moreover, the type of rigid protection sought by Procter at this posture of the

2. As is pointed out in the affidavit of John C. Connor, the Comptroller of Lever Brothers, much public information of this nature concerning Procter & Gamble is already available, both from annual reports filed with the Securities and Exchange Commission, and from reports filed with the State Corporation and Securities Commission in Michigan.

3. Procter argues that with respect to the Sales Census figures, the data is broken down into categories of products, and that there is a further specification of brands within each category. But the affidavit of John C. Connor indicates that there is generally a considerable number of brands within each category, thus making it virtually impossible to further break down the data by brand names.

case is likely to be only illusory in nature. This data will undoubtedly be introduced at the trial, where Lever personnel properly will have a full opportunity to examine and consider it. Indeed, to deprive the knowledgeable personnel of the absolute right to examine and discuss these documents at the trial would be tantamount to depriving Lever of the right to defend. Therefore, if pre-trial disclosure is not allowed, substantial delays at the trial would result while this data is being analyzed and evaluated. And, all agree that one of the prime purposes of the federal discovery procedure is to facilitate adequate pretrial preparation, and thereby to avoid subsequent delay at the trial. See 4 Moore, Federal Practice, para. 26.02, at 1016 (2d ed. 1950). To grant Procter the absolute restrictions sought would be merely to delay the inevitable, and would at the same time frustrate the purpose of the discovery provisions. See Caldwell-Clements, Inc. v. McGraw-Hill Pub. Co., D.C.S.D.N.Y.1952, 12 F.R.D. 531, 545.

While I, therefore, hold that Lever is entitled to full discovery, this privilege should in fairness to all concerned be exercised in a manner which will not hamper its ability to prepare its defense, and at the same time will operate to discourage any improper and unfair use of the material to be produced. I am of the opinion that in the context of this case, a proper protective order can be framed to accomplish these objectives. Thus, while I conclude that Procter is not entitled to the rigid type of protection it seeks, in order to assure that Lever will not use this data for an improper competitive purpose, the information is not to be disclosed to Lever's personnel, except insofar as it may be necessary for consultation with counsel for Lever in order to prepare for and assist in the defense of the action. Any such personnel obtaining access to the information for this purpose shall not make copies, or reveal the contents of the documents, or use the information for any purpose other than for the preparation and defense of this action. Of course, at this stage, none of this data, including the information contained in the reports made by the A. C. Nielsen Co., is to be disclosed to the public.[4]

The motion of Procter & Gamble is denied except that a limited protective order, as indicated above, may be entered. Settle order.

4. Procter argues that Lever itself realized the need for protection of the type of information involved here, since it sought and obtained more restrictive protective orders with respect to information of this nature requested from it by the government in earlier motions. In an order filed October 24, 1959, it was provided that

"Plaintiff shall not disclose in whole or in part any information contained in the documents produced by Lever * * to anyone other than personnel of the federal government, including personnel retained to assist in the prosecution of this action, as is necessary in the enforcement of the antitrust laws * * * except on the following conditions:

"(a) Prior to making the disclosure, plaintiff shall inform Lever of the information to be contained in the proposed disclosure; and

"(b) Such disclosure shall not be made unless Lever Brothers consents in writing or does not object to the Court within seven calendar days from date of notice of the proposed disclosure, and if Lever Brothers objects to such disclosure only upon a further order of the Court." A similar restrictive provision is included in an order entered on January 30, 1959.

However, it must be noted that these orders were submitted on the consent of all the parties, and that no judicial determination of the right to a less restricted disclosure was necessary. Moreover, in the prior orders, unrestricted disclosure was allowed to *anyone* within the Federal government "as is necessary in the enforcement of the antitrust laws"; only disclosure to outsiders was placed under any restriction. By the instant motion, Procter seeks to place restrictions on disclosure to those most intimately connected with and affected by the "enforcement of the antitrust laws" in this litigation: Lever's personnel.