UNITED STATES of America, Plaintiff,

v.

AMERICAN OPTICAL COMPANY, an Association, American Optical Company, a Corporation, and Bausch & Lomb Incorporated, Defendants.

Misc. No. 1127.

United States District Court
N. D. California, S. D.
March 1, 1966.

William I. Cohen, Palo Alto, Cal., for Julius Blumenthal.

Steven E. Keane, Foley, Sammond & Lardner, Milwaukee, Wis., for American Optical Co.

Roger M. Doering, Simpson, Thacher & Bartlett, New York City, for Bausch & Lomb Inc.

GIGNOUX, District Judge (by designation):

This proceeding arises out of a civil antitrust action brought by the government against American Optical Company and Bausch & Lomb Incorporated in the United States District Court for the Eastern District of Wisconsin, in which the government charges that the defendants have conspired to restrain and monopolize, and have monopolized and attempted to monopolize, the interstate trade and commerce in the manufacture and wholesale distribution of ophthalmic goods and supplies, in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2. On May 31, 1965, as part of a nation-wide pre-trial deposition

program authorized by the Court in the principal action, American Optical Company caused to be served upon Julius Blumenthal in this District a subpoena duces tecum calling for the production of various documents by Mr. Blumenthal as an officer of Metro Optical Company and Coast Optical Company. Metro and Coast are not parties to this action. They are independent manufacturers of ophthalmic goods and supplies, and competitors of the defendants in the San Francisco area. On July 7, 1965, Mr. Blumenthal filed in this Court a motion to quash the subpoena duces tecum, pursuant to Fed.R.Civ.P. 45(b), on the grounds that it is unreasonable and oppressive; the designation of documents is unduly broad, ambiguous and insufficient; the subpoena calls for irrelevant, privileged and confidential information; and the defendants have not shown good cause for the requested production.[1]

While the original subpoena called for the production of a wide variety of documents, the defendants now seek only the following four types of documents, for the period 1949 through 1961:

(1) Documents showing Metro's and Coast's Rx and stock sales,[2] in units and in dollars;

(2) Price lists issued by Metro and Coast;

(3) Documents showing off-list pricing by Metro and Coast, or by any other person in the optical industry; and

(4) The profit and loss statements and balance sheets of Metro and Coast.

The defendants have further agreed that to the extent the Court orders any documents produced under the subpoena, a protective order may be entered providing that the documents be used only for the defense of the principal action.

Mr. Blumenthal has waived any objection to production of the price lists issued by Metro and Coast. He objects strenuously, however, to the production of the other documents requested. With respect to these documents his basic contentions are that they contain irrelevant and confidential information; that the defendants have not shown good cause for the requested production; and that production of the documents would be unduly burdensome on him.[3]

■■ There is no essential dispute as to the principles which must guide the Court in the disposition of this motion. The Federal Rules of Civil Procedure are controlling. More particularly, Rule 45 (d) authorizes deposition subpoenas and permits them to require the production of designated documents relating to any matter within the scope of the examination permitted by Rule 26(b), subject however to the provisions of Rule 30(b) and Rule 45(b). Rule 26(b) permits the examination of a deponent on "any matter, not privileged, which is relevant to the subject matter involved in the pending action." Rule 30(b) provides that "for good cause shown" the court may make any order "which justice requires to protect the party or witness from annoyance, embarrassment, or oppression." Rule 45(b) authorizes the court to "quash

1. The motion is pending in this Court because the subpoena issued out of this Court in accordance with Fed.R.Civ.P. 45 (d). It came on for hearing before the Honorable George B. Harris, Chief Judge of this Court, on June 8, 1965. Thereafter, at Judge Harris' suggestion, by stipulation of the parties, it was submitted for decision to the present judge, who had been previously designated for the trial of the principal action and has been specially designated to hear the present motion. The parties have waived oral argument, and the matter has been submitted for determination upon written briefs and an agreed record.

2. "Rx" and "stock" are words of art in the industry. Rx sales refer to prescription sales of finished lenses by wholesale laboratories to dispensers. Stock sales refer to sales of unfinished lenses or lens blanks, and other components of spectacles, by manufacturers to wholesale laboratories, or in some instances directly to dispensers.

3. As presently limited, the designation of the documents is clearly sufficient.

or modify the subpoena if it is unreasonable and oppressive." By analogy to Rule 34, when a party objects to the enforcement of a subpoena, the burden is upon the party seeking the production to show "good cause"—that is, that the requested documents are necessary to establish his claim or defense, or that denial of production would unduly prejudice the preparation of his case or cause him hardship or injustice. 4 Moore, Federal Practice, para. 34.08, at 2450 (2d ed. 1963). Thus, if the documents sought by the defendants in this proceeding are relevant to the subject matter of this action, and the defendants have shown good cause for their production, the subpoena should be enforced unless the documents are privileged or the subpoena is unreasonable, oppressive, annoying, or embarrassing. Covey Oil Co. v. Continental Oil Co., 340 F.2d 993, 997 (10th Cir.), cert. denied, 380 U.S. 964, 85 S.Ct. 1110, 14 L.Ed.2d 155 (1965); Boeing Airplane Co. v. Coggeshall, 108 U.S.App.D.C. 106, 280 F.2d 654, 658–659 (1960).

Applying these accepted principles to the present proceeding, the Court is of the view that the requested documents are relevant; that good cause for their production has been shown; and that enforcement of the subpoena, to the extent presently requested and subject to an appropriate protective order, will not be unreasonable, oppressive, annoying, or embarrassing.

The requested documents are relevant to the subject matter of the action.[4] The complaint charges a nation-wide conspiracy to restrain trade and monopolization by the fixing of prices and by the suppression of competition. Among the specific acts charged to have been done by the defendants in furtherance of the alleged conspiracy are that the defendants engaged, in certain sections of the United States, including the San Francisco area, in predatory pricing practices, and that they manipulated the spread between factory to wholesaler prices on the one hand, and wholesaler to dispenser prices on the other hand, so as to force independent wholesale laboratories out of business. The complaint also charges that independent wholesalers cannot effectively compete if they are not franchised by one of the defendants. The defendants vigorously contest these charges. One of several defenses to the charge of predatory pricing is that they adopted the prices they did, not from predatory motives, but in order to meet price competition from others in the industry, including Mr. Blumenthal's companies. In defense to the charge of attempted suppression of competition by manipulating the spread between their wholesale and retail prices, the defendants seek to show that independent ophthalmic wholesalers, including Mr. Blumenthal's companies, have not only not been forced out of business, but have prospered during the period of time embraced by the complaint. To rebut the charge that non-franchised wholesalers are unable to compete, the defendants also seek to show that Mr. Blumenthal, who has never been franchised by either defendant, could, and did, prosper in the absence of such franchise. Surely, Mr. Blumenthal's price lists and any information he has concerning off-list pricing by his companies or by others are directly material and

---

4. Under the standard of relevancy prescribed by Rule 26(b), which is made applicable to this proceeding by Rule 45 (d), the Court is not concerned with whether or not the documents themselves would be admissible in evidence, but with whether or not they may be "reasonably calculated to lead to the discovery of admissible evidence." Rule 26(b); 4 Moore, supra, paras. 26.15, 26.17, 34.10 n. 5. It is also settled that the scope of a discovery examination under Rule 26(b) is broader than an examination at the trial. Thus, Rule 26(b) has been consistently interpreted as requiring "relevancy to the subject matter" of the action, rather than relevancy to "the precise issues presented by the pleadings." Kaiser-Frazer Corp. v. Otis & Co., 11 F.R.D. 50, 53 (S.D.N.Y.1951); 4 Moore, supra, para. 26.16(1).

relevant to the defense asserted by the defendants to the charge of predatory pricing. It seems equally evident that an inquiry into the sales and financial success of Mr. Blumenthal's businesses is highly material and relevant to counter the charges of suppression of competition and inability to compete.

Mr. Blumenthal insists, however, that the good faith meeting of competition defense is not available to the defendants in this case because the complaint does not charge a violation of the price discrimination provisions of the Robinson-Patman Act. 15 U.S.C. § 13 (a), (d), and (e). Neither logic nor authority supports this position. To the contrary, it is clear in principle and established by the decided cases that in order to support a defense to a Sherman Act charge that predatory pricing practices have been used in an attempt to drive independent competitors from the market, the defendants are entitled to show that their pricing policies were established, not from predatory motives, but for legitimate business purposes, including the purpose of meeting competition. Covey Oil Co. v. Continental Oil Co., supra, 340 F.2d at 997–998; United States v. New York Great A. & P. Tea Co., 67 F.Supp. 626, 642 (E.D.Ill.1946), aff'd, 173 F.2d 79 (7th Cir. 1949). In Covey Oil Co., the court expressly rejected a similar contention to that made by Mr. Blumenthal here. That case was an action for treble damages brought under both the Sherman Act and the Robinson-Patman Act. A principal charge in the complaint was that the defendants engaged in predatory price cutting by subsidizing their affiliated gasoline stations in order to enable them to engage in price wars with independent dealers. One of the defenses asserted by Continental to this charge was that its pricing policies were adopted to meet the price competition of the independent dealers. Continental sought to obtain documents showing the selling price of all gasoline sold in the relevant market by the independent competitors alleged to have been the victims of the squeeze. In affirming the denial of a motion to quash the subpoenas, the court said,

"Relevancy is shown. The complaint charges restraint of trade and monopoly in the fixing of gasoline prices and in the suppression of competition. * * * The wholesale price and volume of admitted competitors directly pertain to *both the Sherman Act and the Robinson-Patman Act charges* and to the defenses asserted against those charges." 340 F.2d at 997. (Emphasis supplied.)

\* \* \* \* \*

" * * * the good faith meeting competition defense is available under § 2(b) of the Robinson-Patman Act. *Additionally, we believe that the showing is sufficient under the Sherman Act charges of restraint of trade and monopoly by fixing gasoline prices and suppressing competition of independent jobbers.* Exploration into the businesses of admitted rivals may well reveal the validity or invalidity of the charge of competition suppression." Id. at 998. (Emphasis supplied.)

Mr. Blumenthal also insists that it is not a defense to the Sherman Act violations alleged in the complaint that the defendants have not been successful in suppressing competition. See Lorain Journal Co. v. United States, 342 U.S. 143, 153, 72 S.Ct. 181, 96 L.Ed. 162 (1951). Therefore, he argues, the information sought concerning his companies' business operations is in no way relevant or necessary to the proper defense of this action. The argument misconceives the scope of the government charges against the defendants and the nature of their defense thereto. It is evident from the complaint that the government is attempting to show that by virtue of their size, and by virtue of actual collusion, the defendants have acquired and utilized monop-

oly power to fix prices and to exclude competitors, and that in fact independent wholesalers cannot effectively compete with the defendants. The defendants deny this. They seek by the subpoenaed documents to show that they were operating in a market which was competitive, and in which independent wholesalers, including Mr. Blumenthal's companies, both set their own pricing policies and flourished. While a purpose to suppress competition may be sufficient to establish the government's claim, Lorain Journal Co. v. United States, supra, obviously instances of actual suppression would strongly bolster it. Conversely, evidence that competition was not in fact suppressed would tend to rebut the charge. As the court commented in Service Liquor Distributors, Inc. v. Calvert Distillers Corp., 16 F.R.D. 507, 509 (S.D.N.Y. 1954), " * * * in an action under the anti-trust laws, based upon an alleged abuse of competition, a competitor's business records, where good cause has been shown, are not only not immune from inquiry, but they are precisely the source of the most relevant evidence." See also United States v. Lever Brothers Co., 193 F.Supp. 254, 256–257 (S.D.N.Y.1961), appeal dismissed, 371 U.S. 207, 83 S.Ct. 304, 9 L.Ed.2d 269 (1962), cert. denied, 371 U.S. 932, 83 S.Ct. 310, 9 L.Ed.2d 272 (1962).[5]

■ What has been said substantially disposes of the argument that the defendants have failed to show good cause for the production of the requested documents. The burden of showing good cause may be sustained by showing relevancy and necessity. Covey Oil Co. v. Continental Oil Co., supra, 340 F.2d at 998; Boeing Airplane Co. v. Coggeshall, supra, 280 F.2d at 659; 4 Moore, supra, para. 34.08, at 2450. Mr. Blumenthal

argues, however, that if, in fact, the defendants' pricing methods were merely designed to meet his lower prices, the defendants would have had knowledge of his prices, and would have detailed records of his prices available, and if they did not have that knowledge, they may not rely on his prices to support the defense of meeting competition. In Covey Oil Co. v. Continental Oil Co., supra, the court effectively disposed of substantially the same contention in the following language:

"Appellants say that if Continental did not know the wholesale prices, it may not rely on them to support a meeting competition defense. The test is not actual knowledge but 'the existence of facts which would lead a reasonable and prudent person to believe that the granting of a lower price would in fact meet the equally low price of a competitor.' Continental says that it had reason to believe that it was meeting a lower price and that it acted on the best available information. The reasonableness of Continental's action can best be shown by the production of the competitive prices." 340 F.2d at 998. (Footnote omitted.)

The cases relied upon by Mr. Blumenthal in support of his argument that the defendants have failed to show good cause are plainly distinguishable. In Hartley Pen Co. v. United States District Court, 287 F.2d 324 (9th Cir. 1961) and in United States v. Serta Associates, Inc., 29 F.R.D. 136 (N.D.Ill.1961), neither relevancy nor need had been shown. In Bada Co. v. Montgomery Ward & Co., 32 F.R.D. 208 (E.D.Tenn.1963), the court refused to require a non-party deposition witness to produce documents which the records disclosed were in the hands of

5. In holding that the requested documents meet the standard of relevancy prescribed by Rule 26(b), the Court is expressing no opinion as to whether any documents produced pursuant to this subpoena will be admissible at the trial. See n. 4, supra.

A hearing on a motion to quash a deposition subpoena is not the proper setting for such a determination. Covey Oil Co. v. Continental Oil Co., supra, 340 F.2d at 998.

the defendant and could be made available to the plaintiff by a motion under Fed.R.Civ.P. 34. In the present case it is clear that the information sought as to the pricing practices and financial condition of Mr. Blumenthal's businesses can only reasonably be obtained from Mr. Blumenthal.

It follows from what has been said that the requested documents must be produced unless the documents are privileged, or enforcement of the subpoena would be unreasonable, oppressive, annoying, or embarrassing. No claim of privilege is asserted,[6] but Mr. Blumenthal vigorously contends that the documents contain confidential and secret business information which would be of competitive advantage to the defendants, and that the disclosure of this information to his two major competitors will result in irreparable injury to the competitive position of his companies.

In cases such as this, the risk of competitive injury to third parties, and the seriousness of such potential injury, must be balanced against the need for the information in the preparation of the defense. As stated by the court in *Covey Oil Co.*, "Judicial inquiry should not be unduly hampered. Inconvenience to third parties may be outweighed by the public interest in seeking the truth in every litigated case. The balancing demands the exercise of a sound discretion by the trial court." Covey Oil Co. v. Continental Oil Co., supra, 340 F.2d at 999; United States v. Lever Brothers Co., supra, 193 F.Supp. at 257.

In the case at bar the Court is satisfied that the risk of competitive injury is minimal, the need for the information in the preparation of the defense is substantial, and the interests of justice require the production of the requested documents. Mr. Blumenthal has made no showing of "serious and clearly defined injury," United States v. Lever Brothers Co., supra at 257; in fact, his fears of harm seem "more theoretical than practical." United States v. Aluminum Co. of America, 193 F.Supp. 249, 250 (N.D. N.Y.1960). The data requested does not involve secret processes or customer lists, information which is concededly entitled to greater protection. Fed.R.Civ.P. 30 (b); 4 Moore, supra, para. 26.22(3). Further, the documents involved do not contain any current information; they cover only the period from 1949 to 1961, so that the information sought is at least four years old. In addition, total sales and profit figures only are sought. For these reasons the Court is disposed to agree with the defendants that the documents here sought do not presently have significant competitive value, and that any risk of competitive injury to Mr. Blumenthal can be minimized by a reasonable protective order designed to protect him from their disclosure or use by the defendants for any purpose other than the preparation of their defense to this case. Cf. United States v. Lever Brothers Co., supra, 193 F.Supp. at 257–258; 4 Moore, supra, para. 26.22(3), at 1291–92.[7]

█ There remains for consideration only Mr. Blumenthal's contention that the production requested would be unduly oppressive and burdensome because it would necessitate the examination of large quantities of documents, requiring

---

6. It is clear that no absolute privilege protects the information sought from disclosure in discovery proceedings. Covey Oil Co. v. Continental Oil Co., supra, 340 F.2d at 999; 4 Moore, supra, para. 26.22 (3), at 1288.

7. Here again, the cases cited by Mr. Blumenthal are not apposite. In Hartley Pen Co. v. United States District Court, supra, disclosure of a secret formula comprising a trade secret was sought. Cooper v. Hallgarten & Co., 34 F.R.D. 482 (S.D. N.Y.1964) and Wiesenberger v. W. E. Hutton & Co., 35 F.R.D. 556 (S.D.N.Y. 1964) involved the federal income tax returns of a party, to which completely different principles are applicable. As previously noted, in United States v. Serta Associates Inc., supra, relevancy was not shown.

a great deal of time and expense. But the fact that the production of documents may involve inconvenience and expense is not alone a sufficient reason for refusing discovery which is otherwise appropriate. Service Liquor Distributors, Inc. v. Calvert Distillers Corp., supra; 4 Moore, supra, para. 34.19(2), at 2476. Furthermore, as defendants point out, the documents called for by the subpoena are only those normally maintained in the regular course of the wholesale optical business, and counsel for the defendants have repeatedly stated, and still affirm, their willingness to accommodate their requests to the manner in which Mr. Blumenthal keeps his records, in order to minimize any hardship upon him.[8] In the view of this Court, Mr. Blumenthal has made no sufficient showing that compliance with the subpoena, as presently limited, would be unduly burdensome or .expensive to him or his companies.[9]

██ The Court holds that the documents requested by the defendants are both relevant and necessary to the defense of the principal action; that good cause for their production has been shown; and that the production of the documents, subject to an appropriate protective order, will not be unreasonable, oppressive or burdensome. Accordingly, an order will be entered denying Mr. Blumenthal's motion to quash the subpoena duces tecum, and directing Mr. Blumenthal to produce, at the time and place set for the taking of his deposition, the documents presently requested by the defendants. The order will further direct defendants' counsel to limit their disclosure of the documents to those of defendants' personnel with whom it may be necessary for counsel to confer in order to prepare the defense to this action, ·and will direct such counsel and personnel not to make copies, or reveal the contents of the documents, or use the information contained therein, for any purpose other than for the preparation of the defense to this action.[10]

Counsel for the defendants shall submit an appropriate order consistent herewith.

8. As presently limited, it cannot be contended that the requested production amounts to the "roving commission" or the "sweeping investigation" into the business affairs of a competitor denounced in Service Liquor Distributors, Inc. v. Calvert Distillers Corp., 16 F.R.D. 344, 347 (S.D.N.Y.1954). Compare also International Commodities Corp. v. International Ore & Fertilizer Corp., 30 F.R.D. 58, 60–61 (S.D.N.Y.1961); Public Administrator of the County of New York v. Rogers, 26 F.R.D. 118 (S.D.N.Y.1960).

9. The record discloses that the defendants have served similar supoenas upon more than 20 independent wholesalers operating businesses similar to Mr. Blumenthal's, and in every instance these witnesses have been able to produce the bulk of the documents called for by the subpoenas.

10. Certainly, at this stage of the litigation this Court cannot properly assume, as Mr. Blumenthal seems to suggest, that the defendants have been guilty of the predatory and anticompetitive practices alleged in the complaint, and that they will not comply in good faith with the conditions of any protective order entered by this Court.