**In the Matter of SURETY ASSOCIATION OF AMERICA, Appellee.**

**GLENDALE FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff-Appellant,**

**v.**

**REPUBLIC INSURANCE COMPANY, Defendant.**

**No. 94, Docket 31256.**

United States Court of Appeals
Second Circuit.

Argued Oct. 19, 1967.

Decided Dec. 8, 1967.

William F. McKenna, Los Angeles, Cal. (McKenna & Fitting, Daniel N. Belin, Aaron M. Peck, Marshall Manley, Los Angeles, Cal.; Proskauer, Rose, Goetz & Mendelsohn, Morton M. Maneker, New York City, of counsel), for appellants.

William T. Griffin, New York City (Watters & Donovan, Dorsey, Burke & Griffin, James B. Donovan, New York City, of counsel), for appellee.

Before WATERMAN, MOORE and HAYS, Circuit Judges.

MOORE, Circuit Judge:

Appellants are savings and loan associations which are plaintiffs in fourteen lawsuits now pending in a United States district court in the Northern District of California. Appellants suffered losses in excess of four million dollars in the aggregate as a result of their having placed deposits in the now defunct San Francisco National Bank. Defendants in the California lawsuits are insurance companies which, it is alleged, are liable for this loss under the terms of insurance policies issued by them to the appellants. The policies are of a standard form, conmmonly called "savings and loan blanket bonds" or "Form 22 bonds."

In one of the cases to which this matter is auxiliary, Union Federal Savings and Loan Ass'n of Pittsfield, Massachusetts v. Transamerica Ins. Co., Civil No. 44549, the defendant moved for summary judgment on the ground that a "deposit" is a "loan" as the word "loan" is used in an exclusion clause of the Form 22 bond. In denying the motion, the District Judge indicated that the term "loan" may be latently ambiguous and that there was presented a genuine issue of material fact relating to the intent of the parties and the circumstances surrounding the execution of the contracts. In response to this ruling, appellants served interrogatories upon the defendants relating to the meaning of the terms and provisions of the Form 22 bond. One defendant, Hartford Accident & Indemnity Company, stated in answer to these interrogatories that appellee, the Surety Association of America, a trade association of insurance companies located in New York, was best qualified to answer these interrogatories. It is the Surety Association that formulates standardized insurance policies and provides interpretations of these policies.

Subsequently, appellants noticed the deposition of John F. Fitzgerald, Secretary of the Surety Association, to be taken in New York City and Mr. Fitzgerald was served with a subpoena *duces tecum,* returnable on December 19, 1966. The subpoena called for the production of files, records, correspondence and documents relating to the adoption of thirteen different standardized bonds including Form 22, for other information relating to interpretations of those bonds, and for communications between the Surety Association and several of the defendants in the California litigation. The deposition was later rescheduled and the subpoena *duces tecum* made returnable on January 23, 1967.

At his deposition, Fitzgerald produced only the documents marked Exhibits 1–14A of this appeal. These documents included information relating to the Form 22 bond and correspondence between the Surety Association and the United States Savings & Loan League (a trade association of savings and loan associations) concerning interpretations of the Form 22 bond. Fitzgerald refused to produce the other documents requested, including communications between the Surety Association and the defendants in the California litigation and minutes of meetings at which formulation of the clauses of the Form 22 bond was discussed.

Because of Fitzgerald's refusal to produce the subpoenaed documents, appellants moved for an order directing the production of the documents described in the subpoena *duces tecum* and requiring the Surety Association to pay the reasonable expenses incurred in obtaining such order. Appellee cross-moved to quash or modify the subpoena on the dual grounds of privilege and lack of relevancy. Judge Ryan did not rule on the question of privilege, but held that the documents, other than those already produced, were not relevant. He, therefore, granted appellee's motion to limit the subpoena to those documents already produced and denied appellant's requested order.

The appealability of this type order was recently sustained in Republic Gear Co. v. Borg-Warner Corp., 381 F.2d 551 (2d Cir. 1967).

■ At the outset we dismiss appellee's claim that the information requested in the subpoena is subject to an "executive" or "governmental" privilege. Appellee's self-characterization as a "governmental agency" is based on the rather tenuous assertion that the Surety Association "functions as an arm or alter ego of the [New York] Superintendent of Insurance". (appellee's brief, p. 21). But if every organization which is somewhat controlled or constrained by state or federal regulations were to claim to be a governmental agency, it is difficult to suggest who would not qualify for such a status. Even within the government itself, the privilege is severely limited. United States v. Reynolds, 345 U.S. 1, 7–8, 73 S.Ct. 528, 97 L.Ed. 727 (1953). There is no authority for extending the privilege as requested here.

The only restriction placed upon the matters which may be gone into upon discovery examinations is that they be relevant. Rule 26(b), Fed.R.Civ.Pro. Relevancy, in this context, is tested by a rather liberal standard. "Thus it is relevancy to the subject matter which is the test and subject matter is broader than the precise issues presented by the pleadings." Kaiser-Frazer Corp. v. Otis & Co., 11 F.R.D. 50, 53 (S.D.N.Y.1951). But, "practical considerations dictate that the parties should not be permitted to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so." Broadway & Ninety-Sixth St. Realty Co. v. Loew's Inc., 21 F.R.D. 347, 352 (S.D.N.Y. 1958).

■ On the question of relevancy, however, the trial judge has considerable discretion and his order should not be disturbed unless there has been an abuse of discretion or when the action taken "was improvident and affected the substantial rights of the parties." Carter v. Baltimore & O. R. Co., 80 U.S.App.

D.C. 257, 152 F.2d 129, 131 (1945). See also Waterman, An Appellate Judge's Approach When Reviewing District Court Sanctions Imposed for the Purpose of Insuring Compliance with Pretrial Orders, 29 F.R.D. 420 (1962).

■ Appellants argue that the district court, acting as an *auxiliary* court, abused its discretion by even considering the question of relevancy when the *primary* court had ordered the production of the documents. As was noted in Dowagiac Mfg. Co. v. Lochren, 143 F. 211, 215 (8th Cir. 1906):

"* * * It is not the duty of an auxiliary court or judge, within whose jurisdiction testimony is being taken in a suit pending in the court of another district, to consider or determine the competency, materiality, or relevancy of the evidence which one of the parties seeks to elicit. It is the duty of such a court or judge to compel the production of the evidence, although the judge deems it incompetent or immaterial, unless the witness or the evidence is privileged, or it clearly and affirmatively appears that the evidence cannot possibly be competent, material, or relevant, and that it would be an abuse of the process of the court to compel its production."

See Perkins v. Endicott Johnson Corp., 128 F.2d 208, 214 (2d Cir. 1942). The difficulty with this rule is that it may subject a non-party witness outside the jurisdiction of the primary court to possibly greater hardship than if he were within the primary court's jurisdiction. In the instant case, appellants would be able to use the facilities of the district court in New York to enforce their subpoena, but would require the witness, if he has a valid objection pertaining to relevancy, to go all the way to California to seek relief. In such a case, a district court acting as an auxiliary court is not powerless to prevent an abuse of the discovery process. Judge Ryan acted properly and out of necessity to avoid a discovery of astounding breadth, extraordinary expense, and only the most collateral relevance. To hold otherwise would be to leave the district courts powerless to act against discovery tactics peripheral in the extreme, perhaps dilatory in motivation, and clearly oppressive to the non-party witness.

■ The record indicates that appellants are concerned with the interpretation of the Form 22 bond and particularly with the word "loan" as it is used in that policy. The subpoena *duces tecum*, however, demands papers and correspondence concerning, in addition to Form 22, twelve other forms and no valid explanation is offered for their possible relevance. Thus, it was not an abuse of discretion to limit the subpoena in that respect.

Judge Ryan went further, however, and also protected some documents which did relate to the Form 22 bond on the ground that:

"Underlying opinions, discussions and comments between the witness trade association and its members—which may or may not have been adopted or followed—are not pertinent or relevant to the words or form which were ultimately adopted and employed in the contract executed by the parties. * * *"

In contract interpretation, the history of the formation of the contract may become inportant in determining the meaning of the final product and may be particularly important in a contract similar to that involved in the California litigation where the insurance companies are responsible for the wording of the contract and present it to the insured on a take-it-or-leave-it basis. In the last analysis it will be for the district court in California to determine their admissibility, but we cannot say categorically that information contained in the minutes of meetings at which the clauses of the Form 22 were discussed and communications between the Surety Association and the defendants concerning the Form 22 bond may not be relevant.

Moreover, if it should appear that, upon production of the material we have herein ordered produced, the additional

material appellants requested may also be relevant, our decision does not foreclose appellants from inspecting that material upon proper application.

 Finally, appellants argue that the district court erred in denying their motion to require appellee to pay the reasonable expenses incurred by them to enforce compliance with the subpoena. Rule 45 (b), Fed.R.Civ.Pro., provides that objections to a subpoena must be made prior to its return date. Appellants allege that because the Surety Association delayed until the deposition to assert its objections, it "completely disrupted and frustrated the deposition causing the appellants unnecessary cost and causing serious inconvenience to counsel who had come from California to take the deposition" (appellant's brief, p. 31). Under the circumstances and because the bounds of the production order were so vague, the Surety Association's delay in objecting is understandable and does not seem to be as prejudicial as the appellants would like us to believe. It appears that appellants' counsel had to be in New York for other depositions so the trip across the country was not a complete loss. Appellants are not entitled to the expenses requested.

The order appealed from is modified to permit the subpoena of the minutes of meetings at which the clauses of the Form 22 bond were discussed and communications between the Surety Association and the defendants concerning the Form 22 bond and, except as modified, is affirmed.

HAYS, Circuit Judge (concurring and dissenting):

I agree with Judge Moore that the additional material with respect to the Form 22 bond should be made available to the plaintiffs. However I would not confine the discovery to Form 22 materials. Other materials sought by appellants may well be relevant to "the meaning of the disputed clauses, the intentions of the insurance companies, the knowledge of ambiguities and the subsequent interpretation of trade usage and custom

concerning such clauses" as the appellant's brief puts it. Moreover it does not appear that appellee would be prejudiced in any way by the production of those materials or that their production would be an undue hardship for appellee.