**UNITED STATES of America,**
**Plaintiff,**

v.

**INTERNATIONAL BUSINESS MA-**
**CHINES CORPORATION,**
**Defendant.**

**No. 69 Civ. 200 (DNE).**

United States District Court,
S. D. New York.

July 8, 1975.

U. S. Dept. of Justice, Antitrust Div., Washington, D. C. by Raymond M. Carlson, for plaintiff.

Cravath, Swaine & Moore by Thomas D. Barr, New York City, for defendant.

### MEMORANDUM

EDELSTEIN, Chief Judge:

As revealed by the progress of this trial to date, and particularly by the examinations of Dr. Eckert and Mr. McDonald, there appears to exist a serious problem with respect to the productivity of the depositions taken in this case. Stated slightly differently, the problem concerns the degree to which the parties

---

have adhered to the basic purposes and functions of a deposition—discovery program as delineated by the Federal Rules and the courts. Of course, one may use the terms deposition and discovery interchangeably since, under the governing rules, the various discovery devices share the same purposes and objectives.

■ As evidenced by the many discovery decisions issued in this case, this court believes in a liberal application of the discovery rules. Thus both parties have been permitted to engage in a broad discovery program. The underpinning of this belief has been the principle that the parties, the court, and ultimately the public will all benefit from a complete and expeditious presentation of all the relevant and non-privileged facts of this case. Toward this objective, the Federal Rules provide an elaborate discovery procedure. And since the rules attempt, where possible, to minimize judicial intercession, the proper functioning of that procedure relies heavily upon the conduct and cooperation of counsel. Recent experiences in this courtroom have compelled me to conclude, however, that the imposition of certain guidelines to structure and frame the additional deposition-discovery sought in this action is now desirable. These guidelines will help effectuate the essential purposes and functions of the deposition-discovery process.

The Advisory Committee's Notes accompanying the 1946 amendments to Rule 26(b) revealed the broad objectives of discovery: "[t]he purpose of discovery is to allow *a broad search for facts,* the names of witnesses, or any other matters which may aid a party in the preparation or presentation of his case." (Emphasis supplied.) These thoughts were echoed by the Supreme Court in the oft-cited case of *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Mr. Justice Murphy there stated that

The new rules . . . invest the deposition-discovery process with a

vital role in the preparation for trial. The various instruments of discovery now serve (1) as a device, along with the pre-trial hearing under Rule 16, to narrow and clarify the basic issues between the parties, and (2) *as a device for ascertaining the facts, or information as to the existence or whereabouts of facts, relative to those issues.* 329 U.S. at 501, 67 S.Ct. at 388 (emphasis supplied). It is that latter purpose which must be emphasized—a device for ascertaining the facts. Indeed, the scope of discovery as articulated in Rule 26(b) is cast in terms of seeking information reasonably calculated to lead to the discovery of admissible evidence.

It appears that this principal foundation of discovery, searching for and obtaining those facts which will be useful for trial, has not been accorded the emphasis it deserves. When a witness is asked a question during the trial which was or should have been asked at his deposition (*i. e.,* the question attempts to adduce evidence which counsel should have anticipated prior to trial he would want to place in the record) and in response to the question the witness states that he cannot answer but is capable of readily ascertaining the answer by resorting to his company's records, it is clear that the "search for the relevant facts" was not at all furthered by that witness' deposition. Instead, the "search" was delayed until trial—the precise occurrence pretrial discovery is designed to avoid.

■ This problem is particularly acute where, as here, many of the witnesses represent corporations. As a result, there is the constant threat that each witness will, while conceding that the answer to a question asked of him at trial lies within the corporation, state that he personally does not have the information. Finding out who does have the information so that *that* individual may be called to the stand is exactly what pretrial discovery is designed to accomplish. This is crystal clear from the principles underlying the rule governing

the taking of a corporation's deposition, Fed.R.Civ.P. 30(b)(6). In short, this "merry-go-round" search for the facts is to be avoided at trial, if at all possible, and consigned instead to the pretrial discovery stages.

■ The general conduct of this trial to date suggests that another vital objective of pretrial discovery may have been disserved: the prevention of unnecessary delays during the course of the trial. As the Chief Judge of this Circuit has stated while on the trial bench "all agree that one of the prime purposes of the federal discovery procedure is to facilitate adequate pretrial preparation, *and thereby to avoid subsequent delay at the trial." United States v. Lever Brothers Co.*, 193 F.Supp. 254, 258 (S.D.N.Y. 1961), *appeal dismissed, Mem.*, 371 U.S. 207, 83 S.Ct. 304, 9 L.Ed.2d 269 (1962) (emphasis supplied).[1] But we need not look to what other judges have said to learn that the prevention of delays at trial is a primary purpose of discovery. The very first rule of the rules of procedure directs us to construe those rules "to secure the just, speedy and inexpensive determination of every action." Fed.R.Civ.P. 1.

As the court has been forced to state time and time again, this objective is not served when witnesses are questioned as to lengthy written memoranda which they are handed for the first time when they take the stand and which they must study carefully if they are to respond accurately. Indeed, the objective appears *fully* compromised when it is revealed that while the witness was questioned at his deposition as to that very document, it was neither marked for identification nor presented to him. What, then, did such pretrial questioning accomplish? A similar indifference to the

prevention of delay is displayed when a witness is asked a question at trial and responds that, to obtain an answer, the examiner must ask someone else. Where it is clear that such a question would be asked, it should have been asked at the witness' deposition so that the individual who can answer would be available in court.

The court is not asking that counsel divulge in advance their trial strategies. Nor is the court requiring the parties to disclose their plans for cross-examination prior to the direct testimony—although it cannot be gainsaid that the skilled examiner must have most of his cross-examination in mind before the witness takes the stand. It must be said, however, that unnecessary delays at trial and the consequent discontinuity of proof as well as the inability to adduce evidence through the testimony of witnesses either because they do not possess the information sought or because they must refer to company records which could have been subpoenaed by the examining party before trial or simply reviewed by the witness before he was called had he been apprised of the information sought during his deposition can destroy an otherwise effective trial strategy.

In an effort to help insure both the productivity of the depositions which remain outstanding in this case and the expeditious consummation of the discovery program and the trial of this action, the court has determined to introduce the following guidelines to govern the conduct of further depositions and certain aspects of the trial. These guidelines should be construed to operate to the extent they remain consistent with both the trial strategy of counsel for both parties and all outstanding orders of this court entered in this action.

---

1. Indeed, one of Judge Kaufman's esteemed predecessors—and a scholar who played a large role in the formulation of modern pretrial procedure—Judge Charles Clark, in an address entitled "To an Understanding Use of Pre-trial," 29 F.R.D. 454 (1962), stated that the purposes of pretrial are "all to the end of *shortening* and *simplifying* the eventual trial." 29 F.R.D. at 456 (emphasis supplied). Although Judge Clark was speaking primarily about the pretrial conference, his thoughts are instructive here as well.

First: Notices to take the deposition of an individual or corporation and subpoenas ad testificandum directed to individuals or to corporations shall indicate with the greatest degree of specificity practicable the subject matters about which the deponent will be examined.

Second: Five business days prior to the date on which the deposition is to commence, the examining party shall submit to the proposed deponent, in writing, as many of those questions which it intends to raise at the deposition as it can then reasonably identify. In the case of corporations, such questions shall be submitted to the individual designated by the corporation to testify as to the subject matter addressed by such questions. This procedure shall in no way affect the right of any examining party to refrain from asking at the deposition any question submitted under this paragraph or to ask additional questions not submitted hereunder.

Third: During the course of the deposition, the examination should attempt to search for and isolate those facts, or the whereabouts of those facts, which will be useful at trial. This principle should be stressed particularly with respect to those facts which the examining party can reasonably anticipate he will seek to introduce at trial, and which can be readily ascertained by the deponent, such as statistical and/or biographical information, through either the deponent's recollection or his recourse to his or his company's records.

Fourth: To the greatest extent possible, documents about which the deponent is examined during his deposition shall be marked for identification and presented to the deponent.

Fifth: With respect to trial witnesses, both parties should attempt (A) to alert the witness, prior to his assumption of the stand, to those subject matters about which he may be examined and which concern readily ascertainable facts about which there is little dispute (e. g., predecessors in office), and (B) in advance of the witness' testimony, either to identify to the witness those documents in the witness' possession or produce to the witness copies of those documents not in his possession about which the witness will be examined.